UNITED STATES of America, Appellee,

v.

Vernon John HERMES, Appellant.

UNITED STATES of America, Appellee,

v.

Anthony George HARTMAN, Appellant.

Nos. 87–5266, 87–5267.

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1988.

Decided May 31, 1988.

Michael F. Fetsch, St. Paul, Minn., for appellant Hermes.

Charles L. Hawkins, Minneapolis, Minn., for appellant Hartman.

Elizabeth de la Vega, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, and PECK[*] and HENLEY, Senior Circuit Judges.

PER CURIAM.

Vernon John Hermes and Anthony George Hartman appeal their convictions of conspiracy to destroy and damage by fire a building used in and affecting interstate commerce, in violation of 18 U.S.C. §§ 371 & 844(i). Hermes was sentenced by the district court[1] to two years imprisonment and a special assessment of fifty dollars. Hartman was sentenced to imprisonment for one year and a day and a fifty dollar assessment.

The events leading to the convictions began with Hermes' association with an individual named Scott DeLong. DeLong owned the DeLong Branch Saloon in Hammond, Wisconsin, which he burned in order to collect insurance proceeds. He retained Hermes, a public claims adjuster, to assist him with the insurance claim. In the summer of 1985 DeLong was charged with arson in a Wisconsin state court. Subsequently, a special agent of the Bureau of Alcohol, Tobacco and Firearms (BATF), sought DeLong's cooperation in an investigation of Hermes. DeLong agreed to cooperate in exchange for the BATF's assistance in obtaining a sentence of five years probation on the state arson charge.

Pursuant to that agreement, DeLong participated in several recorded conversations with Hermes in which Hermes advised DeLong on how to testify at the arson trial and told DeLong how he should have started the fire. Hermes also stated that he had arranged a fire in a bar in St. Paul. DeLong told Hermes that he had a friend who needed Hermes' help. Hermes instructed DeLong to have his friend call him. The following day BATF agent Donald Roggenbauer, posing as DeLong's friend under the assumed name of Don Rogers, called Hermes and set up a meeting. At the meeting Roggenbauer told Hermes that he had business property that he wished to have burned. Hermes told Roggenbauer that he would arrange for another person to actually burn the building. He asked several questions about the building's location, contents and construction. It was agreed that Hermes would receive ten per cent of the insurance proceeds and $5,000.00 for arranging the fire.

The two men met again to visit the building, which is owned by the Leamington Company, a commercial real estate holding company that owns and leases trucking terminals and storage space. Four loading bays were rented, but no space inside the building was rented. Hermes obtained the keys from Roggenbauer, and told him he would send the arsonist out to the building. Hermes stated that the arsonist was a carpenter and a contractor, and that he would act as if he were rehabilitating the building while preparing to burn it. After they left the building, Roggenbauer gave Hermes $1,000.00 as a down payment.

[*] The Honorable John W. Peck, United States Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota.

The next day BATF agents observed Hermes and Hartman inspecting the building. The two left, but Hartman returned alone and went inside for a few minutes. Subsequently Hermes told Roggenbauer that his "guy" had determined that the way to burn the building was to bring flammable materials in and make it appear as if vandals had started the fire. Hermes and Hartman were then arrested. At the time of his arrest, Hartman had the keys to the building in his pocket.

Both Hermes and Hartman contend that the evidence was insufficient to establish the existence of a conspiracy. Hermes argues that the evidence shows instead that he was merely performing a "scam" on Roggenbauer to recoup money owed to him by DeLong. The jury was clearly entitled to disbelieve this story. DeLong owed Hermes a total of $19,545.00; yet when Roggenbauer offered more than a one thousand dollar down payment for the arson, Hermes declined, saying it was unnecessary. We agree with the government that the jury well could have believed that Hermes' refusal of a larger down payment was inconsistent with a scheme to defraud Roggenbauer, and that it was more consistent with a plan to recover ten per cent of the $300,000.00 in insurance proceeds. Hermes' claim that he was trying to defraud Roggenbauer is unsupported by any evidence aside from his own testimony. We cannot conclude as a matter of law that the jury must have entertained a reasonable doubt as to Hermes' intent.

Both defendants urge that there was insufficient proof of an agreement between them to commit arson. We summarized the rules pertaining to the agreement element of conspiracy in *United States v. Pintar*, 630 F.2d 1270 (8th Cir.1980):

> The agreement need not be formal or express, and may consist of nothing more than tacit understanding. The existence of the agreement may be shown by circumstantial evidence, including the conduct of the conspirators and any attending circumstances, particularly circumstances indicating that the defend-

ants acted in concert to achieve a common goal.

*Id.* at 1275 (citations and internal quotations omitted). "On review, the evidence of agreement must be viewed in the light most favorable to the government, and the court must accept all reasonable inferences which tend to support the verdict." *Id.* at 1276 (citations omitted).

We have already observed that the jury was entitled to disbelieve Hermes' "scam" explanation. In the absence of that explanation, there was no evidence of any other legitimate reason for Hermes and Hartman to visit the building and for Hartman to have the keys in his possession at the time of his arrest. Hermes had told Roggenbauer that the arsonist was sixty-three years old and a carpenter, a description fitting Hartman. Evidence was introduced that Hermes told Roggenbauer that "his guy" had checked the insulation in the building to determine whether it was fireproof. The jury might have believed that this testimony was bolstered by Hartman's returning to the building alone for a few minutes, conceivably to obtain a piece of insulation. It follows that the jury was entitled to believe that the conduct of Hermes and Hartman indicated an agreement to carry out the scheme that Hermes had entered into with Roggenbauer.

Hartman contends that, even if the evidence showed an agreement, the evidence did not show that an overt act in furtherance of the conspiracy was committed subsequent to the agreement, because it was not established when the agreement occurred. The jury quite reasonably could have believed, however, that one or more of the defendants performed overt acts after entering into an agreement to burn the building. Hartman's act of taking the keys with him, his testing the insulation for flammability, and Hermes' meeting with Roggenbauer to discuss the method of burning the building all logically could follow an agreement between the defendants that they were going to commit the arson. The government need show that only one of the conspirators engaged in one overt act in furtherance of the conspiracy, and

the act itself need not be criminal in nature. *United States v. Hobson,* 686 F.2d 628, 630 (8th Cir.1982); *United States v. Bass,* 472 F.2d 207, 213 (8th Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973). In sum, we do not find the evidence as to the existence of a conspiracy insufficient.

◼ Both appellants contend that the building was not being used in an activity affecting interstate commerce within the meaning of 18 U.S.C. § 844(i), which makes it a crime to damage or destroy by fire or explosive "any building ... used in interstate commerce or in any activity affecting interstate or foreign commerce." In order to satisfy the interstate commerce requirement, only a *de minimis* connection to interstate commerce is required. *United States v. Muza,* 788 F.2d 1309, 1311 (8th Cir.1986) (citing *United States v. Voss,* 787 F.2d 393, 397 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986)). When it enacted § 844(i), Congress intended to exercise its full power under the commerce clause of the Constitution. *Russell v. United States,* 471 U.S. 858, 859, 105 S.Ct. 2455, 2456, 85 L.Ed.2d 829 (1985). "The rental of real estate is unquestionably ... an activity [affecting interstate commerce.]" *Id.* at 862, 105 S.Ct. at 2458.[2]

Appellants argue that the interior of the building was not in use at the time of the indictments and had not been for quite some time, that it was dilapidated with the door boarded up, and that it was therefore not in interstate commerce. The reference in § 844(i) to property "used in" interstate commerce has been held to require merely that the property "has some relationship to an activity of commercial nature." *United States v. Andrini,* 685 F.2d 1094, 1095–96 (9th Cir.1982); *accord, United States v. Patterson,* 792 F.2d 531, 533–34 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 220, 93 L.Ed.2d 149 (1986). Appellants do not

dispute that the owner of the building advertised the space for lease. Appellants argue that the advertisement included other properties as well, but do not explain how that detracts from the commercial nature of the property they were accused of conspiring to burn. Appellants do not contend that the property could not have been leased. Thus, we are left with the inescapable conclusion that the property was held out by its owner as, and was in fact, available for commercial purposes.

That the building was not currently occupied by a tenant does not detract from its character as commercial property. In *Voss, supra,* we observed in dicta that a vacant single family residence owned by a company engaged in the rehabilitation and resale of real estate would satisfy the interstate commerce requirement. 787 F.2d at 398. More recently we held that a bar undergoing rehabilitation by its owner after previous firebombings did not lose its commercial nature even though it was closed to the public. *United States v. Shriver,* 838 F.2d 980, 982–83 (8th Cir. 1988). *See also United States v. Grossman,* 608 F.2d 534, 535–37 (4th Cir.1979) (nexus to interstate commerce established with respect to backhoe that was not in use for over two years but was advertised for sale). Accordingly, we must reject appellants' argument that the government failed to establish that the building was used in or affected interstate commerce.

◼ Finally, Hermes asserts that the district court erred by admitting evidence of prior acts. In the course of Hermes' recorded conversation with DeLong, Hermes stated that he had arranged a fire in a bar in St. Paul. Hermes claims that the trial court's admission of this statement violated Rule 404(b) of the Federal Rules of Evidence, which bars evidence of prior acts introduced solely for the purpose of showing that defendant "acted in conformity

---

**2.** The Supreme Court has made clear that a determination that an activity affects interstate commerce need not depend upon any interstate movement connected with the activity. It suffices that the activity is "an element of a much broader commercial market" that Congress has the power to regulate. *Russell,* 471 U.S. at 862,

105 S.Ct. at 2458. Thus, we need not perform the type of analysis we undertook in *United States v. Hansen,* 755 F.2d 629, 630 (8th Cir.) (tenants of building were transients from other states), *cert. denied,* 474 U.S. 834, 106 S.Ct. 105, 88 L.Ed.2d 85 (1985). *See Voss,* 787 F.2d at 398 & n. 2.

therewith." However, the rule does allow evidence of prior acts for other legitimate purposes. The trial judge has discretion to admit prior acts evidence if it is relevant to a purpose other than the defendant's character, the evidence is clear and convincing, and the potential for unfair prejudice does not outweigh the probative value of the evidence. *United States v. DeLuna*, 763 F.2d 897, 912–13 (8th Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). If the evidence is proffered on issues such as intent, knowledge or plan, the prior acts must be "similar in kind and reasonably close in time to the offense charged" at trial. *United States v. Drury*, 582 F.2d 1181, 1184 (8th Cir.1978). Rule 404(b) is a rule of inclusion. The trial court has broad discretion in determining whether to admit the evidence, and its decision will not be overturned unless the appellant shows that "the evidence in question clearly had no bearing upon any of the issues involved." *United States v. Estabrook*, 774 F.2d 284, 287 (8th Cir.1985).

We agree with the government that Hermes' admission that he was involved in a prior arson scheme was relevant to his intent. *United States v. Bourgeois*, 746 F.2d 401, 405 (8th Cir.1984). The prior act was essentially identical to the object of the conspiracy. The evidence, consisting of Hermes' own recorded statement, was clear and convincing. Hermes does not object that it was too remote in time. The prior arson was highly probative of his intent, particularly in light of his defense that he was merely running a scam on Roggenbauer to recoup money that De-Long owed him, and therefore outweighs any prejudicial effect of its admission. Thus, we conclude that the trial court did not err in admitting the prior act evidence.

Because we find no error by the district court or failure of proof at trial, we affirm appellants' convictions.