**UNITED STATES of America, Appellee,**

v.

**William Victor POWELL, Appellant.**

**No. 87–1349.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 9, 1988.

Decided Aug. 4, 1988.

Joe H. Harris, Cedar Rapids, Iowa, for appellant.

Paul C. Lillios, Asst. U.S. Atty., Cedar Rapids, Iowa, for appellee.

Before HEANEY and MAGILL, Circuit Judges, and FAIRCHILD,[*] Senior Circuit Judge.

MAGILL, Circuit Judge.

## I. INTRODUCTION

William Victor Powell (Powell) was convicted by a jury of one count of bank robbery, in violation of 18 U.S.C. § 2113(a), and one count of conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371. Powell was sentenced as a dangerous special offender, pursuant to 18 U.S.C. § 3575, to twenty-five years for the bank robbery count and twenty-five years for the conspiracy count, with the sentences to run consecutively.

Powell appeals these convictions, arguing (1) that the district court[1] erred in refusing to suppress identification evidence obtained at a pre-indictment lineup, and (2) that there was insufficient evidence to sustain the jury's verdict on the conspiracy count. For the following reasons, we affirm.

## II. BACKGROUND

On June 25, 1986, the American Federal Savings and Loan in Mason City, Iowa (American Federal or S & L) was robbed by a man wearing what bank tellers characterized as an obvious disguise, consisting of a fake beard, hat and a heavy dark sport coat. The man, described as having a fair complexion, roughly six feet in height, thin and wearing silver wire-framed glasses, fled the S & L on foot, after having stuffed approximately $7,155.00 into his coat pockets.

A passing motorist, Lynn Dirks (Dirks), saw a strangely-attired man fleeing the S & L. She followed him to an alley where

---

* THE HONORABLE THOMAS E. FAIRCHILD, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

she observed him enter the passenger side of a waiting dark blue Pontiac. Dirks also saw a second individual driving the car.

Dirks followed the Pontiac as it left the alley. She observed the man on the passenger side of the car remove the hat, jacket and false beard. She later testified that the passenger and driver appeared to be engaged in animated conversation. Dirks wrote down the vehicle's license plate number and description. She then proceeded to work and later called the police after co-workers informed her that a bank robbery had occurred earlier in the day.

A police records check revealed that the blue Pontiac was registered to Robert Powell (Robert), the appellant's nephew. The records check also indicated that Powell had previously owned this vehicle, and had transferred ownership to Robert in 1983 or 1984.

Based on the license plate information, the police obtained a search warrant and searched Robert's house and the blue Pontiac on the evening of the robbery. The police found a piece of a wig in the basement. They also found dark fibers in the Pontiac. Comparison of the fibers found in the car and the piece of wig found in the house indicated that the fibers were identical. Two American Federal employees and Dirks later testified that the color of the piece of wig taken from the house appeared to match the robber's false beard.

On July 8, 1986, three photo arrays were shown to four witnesses: Diane Yunek, Kari Dixon and Mary Mehlberg, all employees of American Federal, as well as Lynn Dirks, the motorist who observed the man leaving the scene of the robbery. Yunek, Mehlberg and Dirks were unable to identify any of the individuals as the person who committed the robbery. Dixon indicated that Powell looked very similar to the individual she saw running across the parking lot.

On August 31, 1986, Powell was arrested by the Mason City Police on an outstanding warrant from Polk County, Iowa for un-related state charges of theft in the second degree and carrying a concealed weapon. After his arrest, Powell remained in custody in the Cerro Gordo County Jail.[2] He was represented on the state charges by Mr. Patrick Byrne of the Cerro Gordo County Public Defender's Office.

On September 3, 1986, Powell took part in a live lineup with five other persons, in which three American Federal employees, Yunek, Dixon and Mehlberg, attempted to identify the person who had robbed American Federal. Prior to the lineup, the Cerro Gordo County Public Defender's Office was notified of the time, date and place of the lineup and asked to attend. Although they agreed to be present, no member of the office was able to attend due to scheduling conflicts. The lineup was held as scheduled, and after viewing the lineup and hearing Powell speak, Yunek identified Powell as the robber.

Powell was subsequently indicted on one count of bank robbery and one count of conspiracy to commit bank robbery with "others unknown to the grand jury." At trial, Powell was also identified by Mehlberg and Dirks.

Powell testified at trial and denied any involvement in the robbery. The jury, however, rejected his version and found Powell guilty on both counts. This appeal followed.

## III. DISCUSSION

### A. The September 3, 1986 Lineup

■ Powell contends that the district court erred in refusing to suppress the identification evidence obtained from the September 3, 1986 lineup. He argues that because he was in the custody of state authorities on unrelated state charges, his right to counsel had attached, and both state and federal authorities were required to provide him with counsel for any proceedings which might take place while he was in custody. We cannot agree.

A defendant's Sixth Amendment right to counsel does not obtain until adversary criminal proceedings have been initiated.

---

2. Mason City lies within Cerro Gordo County.

*United States v. Wade,* 388 U.S. 218, 223–27, 87 S.Ct. 1926, 1930–32, 18 L.Ed.2d 1149 (1967). While it is well-settled that a post-indictment lineup is a "critical stage" of a criminal proceeding which entitles a defendant to assistance of counsel, *Wade,* 388 U.S. at 237, 87 S.Ct. at 1937, it is equally well-settled that such is not the case for lineups which occur pre-indictment. *Kirby v. Illinois,* 406 U.S. 682, 688–90, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972); *Rowe v. Lockhart,* 736 F.2d 457, 459 (8th Cir. 1984). Here, the lineup of which Powell complains occurred on September 3, 1986, seven days before Powell was indicted. Because Powell did not have a right to counsel at the time of the lineup, the government could not have violated that right; therefore, the district court's refusal to suppress the lineup evidence was proper.

■ This conclusion is unaffected by the fact that Powell was in state custody. "[O]nly those identification confrontations which occur after the defendant has been formally charged with the offense for which the identification testimony is sought require presence of counsel." *Sanchell v. Parratt,* 530 F.2d 286, 290 n. 2 (8th Cir. 1976) (per curiam); *see United States ex rel. Espinoza v. Fairman,* 813 F.2d 117, 120–21 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987).

### B. Conspiracy Charge

Powell next argues that the district court erred in denying his motion for judgment of acquittal on the conspiracy count because, he asserts, the evidence was insufficient to support a conviction. He does not challenge the sufficiency of the evidence with respect to the bank robbery count.

■ In reviewing the denial of a motion for judgment of acquittal, we consider the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences which logically may be drawn from the evidence. *Rothgeb v. United States,* 789 F.2d 647, 648 (8th Cir.1986). The jury verdict will only be overturned if the evidence is such that reasonably-minded jurors *must* have a reasonable doubt as to the existence of any

of the essential elements of the offense. *United States v. Wright,* 835 F.2d 1245, 1248 (8th Cir.1987).

Powell suggests that there was insufficient evidence to support the conspiracy charge because the government failed to prove that Powell and the driver of the blue Pontiac had agreed to rob American Federal.

■ A conspiracy under 18 U.S.C. § 371 consists of an agreement to commit an offense against the United States, along with an act by one or more of the conspirators to effect the object of the conspiracy. *See United States v. Campbell,* 848 F.2d 846, 851 (8th Cir.1988). This court has summarized the rules relating to the agreement element of conspiracy as follows:

> The agreement need not be formal or express, and may consist of nothing more than tacit understanding. The existence of the agreement may be shown by circumstantial evidence, including the conduct of the conspirators and any attending circumstances, particularly circumstances indicating that the defendants acted in concert to achieve a common goal.

*United States v. Hermes,* 847 F.2d 493, 495 (8th Cir.1988) (per curiam) (quoting *United States v. Pintar,* 630 F.2d 1270, 1275 (8th Cir.1980)). The evidence need not exclude every reasonable hypothesis except guilt. *United States v. Nabors,* 762 F.2d 642, 653 (8th Cir.1985). "Seemingly innocent acts taken individually may indicate complicity when viewed collectively and with reference to the circumstances in general." *United States v. Mariani,* 725 F.2d 862, 865–66 (2d Cir.1984).

■ Upon reviewing the evidence in this case, we conclude that it was sufficient to support the jury's conviction on the conspiracy count. We find the following facts most probative on the issue of Powell's involvement in a conspiracy to rob American Federal. First, there was another individual, the driver of the blue Pontiac, who assisted Powell in his flight from American Federal; second, the driver was waiting in the car in a secluded area a short distance

from American Federal; third, Powell went directly to the getaway vehicle immediately following the robbery; fourth, Powell was still wearing the obvious disguise when he entered the car; and fifth, as the car left the area, Powell and the driver were seen talking and gesturing as Powell removed the disguise in full view of the driver. Additionally, the fact that the disguise was not easily concealable supports an inference that the driver had to know about the disguise before the robbery. This suggests the driver's prior agreement to participate in the robbery.

Viewed in the light most favorable to the government, these facts, when taken together, were sufficient to allow a reasonable jury to conclude that Powell and the driver of the blue Pontiac were jointly involved in the robbery of American Federal.

Accordingly, Powell's convictions are affirmed.