UNITED STATES of America, Appellee,

v.

Evester GORDON, Appellant.

No. 91–3642.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1992.

Decided Sept. 8, 1992.

Donald L. Wolff, Clayton, Mo., argued, for appellant.

Dean R. Hoag, St. Louis, Mo., argued, for appellee.

Before ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

A jury convicted Evester Gordon of two counts of distributing heroin, and the district court sentenced him to thirty-three months in prison. Gordon appeals his conviction and sentence, arguing that the district court erred by (1) denying his *Batson*[1] objection to the prosecutor's use of peremptory challenges to exclude black venirepersons; (2) denying his motion for a judgment of acquittal on the ground of insufficient evidence; and (3) sentencing him to thirty-three months in prison in the mistaken belief that he was subject to a sentence of that length for each distribution count. We affirm the convictions, but reverse and remand for resentencing.

On January 30, 1991, a grand jury returned a two-count indictment against Gordon, charging him with distributing heroin in St. Louis on September 20 and 25, 1989. During jury selection, the government exercised two of its peremptory challenges to strike black venirepersons. Gordon made a *Batson* objection based on these two strikes. He argued that it was reasonable to assume that one of the venirepersons had been excluded on account of her race because she had made no comments during the voir dire. The district court found that Gordon had failed to establish a prima facie *Batson* claim, reasoning that the government had exercised only two of its six peremptory challenges to strike black venirepersons and had not challenged three other blacks who served on the petit jury.

At trial, the government's main witness was George Noel, who had become an informant after he was indicted on a continuing criminal enterprise (CCE) charge for participating in a large-scale heroin distribution ring. The government granted Noel immunity from prosecution on the CCE charge and for other criminal activity in exchange for his cooperation. Noel testified that he spoke with Gordon in September 1989 about the possibility of purchasing some heroin. After Gordon said he had access to a large supply of heroin, Noel contacted FBI agent Don Mendrela. Mendrela told Noel to set up a buy, and Noel arranged to purchase one-half ounce of heroin from Gordon on September 20. Prior to the sale, Noel met with Mendrela. Mendrela gave Noel $4500 in government funds and searched Noel to ensure that he was not carrying any contraband. Noel then returned to his place of business, a car wash, to meet with Gordon. The men met briefly in the office, and Gordon left to pick up the heroin. Gordon returned three to four hours later with the heroin. After unsuccessfully attempting to negotiate the price down to $4250, Noel paid Gordon the $4500.

On September 25, Noel contacted Gordon to arrange to purchase one ounce of heroin. Gordon agreed to come to the car wash with the heroin in thirty minutes. Noel then met with Mendrela at a location near the car wash, where Mendrela provided him with $8500 in government funds and searched Noel for contraband. Noel returned to the car wash, and Gordon showed up about one hour later with the heroin. Noel gave him the money and examined the heroin. Following both purchases, Noel turned the heroin over to Mendrela. On cross-examination, Noel admitted that the government had agreed not to prosecute him for his participation in the CCE, for his failure to report $2 million in drug income,

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

and for his involvement in two drug-related murders. He also testified that the government had placed him in the witness protection program, through which he had received approximately $77,000 in government funds. He testified that pursuant to his agreement with the government, he was to be paid twenty-five percent of any illegally obtained money he helped to recover, and he had received more than $30,000 under this arrangement.

Mendrela also testified about the drug purchases. He stated that he met Noel prior to both sales, searched him, and provided him with the purchase money. Mendrela followed Noel back to the car wash and maintained surveillance of the business both times. He saw Gordon enter and exit the car wash twice on September 20. After Gordon left the second time, Mendrela met Noel, and Noel gave the one-half ounce of heroin to him. Mendrela testified that on September 25, Gordon arrived at the car wash, entered, remained for a brief time, and then departed. After that, Noel met with Mendrela and gave him the ounce of heroin. On cross-examination, Mendrela testified that while he could not see inside the car wash, he did see Gordon enter it on September 20 and 25. Mendrela further testified that the government did not dust the bag of heroin for fingerprints or search Noel's office before either meeting. The government also presented testimony from a chemist, who analyzed the two packages of heroin. He stated that the first package contained 12.5 grams of twenty-four percent pure heroin, and the second package contained 24.5 grams of twenty-three percent pure heroin.

At the close of the government's evidence, Gordon moved for a judgment of acquittal. He argued that the government's entire case hinged on the testimony of Noel, and that Noel was not a credible witness. The district court denied the motion, concluding that Noel's credibility was for the jury to determine. Gordon then put on his defense, which primarily consisted of taking the stand and denying guilt. In rebuttal, Mendrela testified that he monitored the September 20 transaction through a Kel transmitter, a body microphone that Noel had concealed on him. Mendrela identified Gordon's voice as one of the two he heard over the transmitter. Mendrela further stated that he heard Noel and Gordon discuss the price of the heroin and count the money. The jury convicted Gordon.

Following the verdict, the district court ordered preparation of a presentence report (PSR). Based on the 37 grams of heroin involved in the two sales, the PSR determined that Gordon's offense level was 18. *See* U.S.S.G. § 2D1.1(c)(13). This offense level, combined with Gordon's criminal history category of I, yielded a sentencing range of 27 to 33 months. Gordon requested a sentence at the low-end of the range. The court denied his request, stating: "[I]f the minimum were imposed on each count consecutive, it would be 54 months. If the maximum is imposed concurrently, it's 33. When there's a possibility of concurrent sentence on two counts, the court thinks you're receiving some equitable consideration in that regard." (Sent. tr. at 15.) The court sentenced Gordon to thirty-three months on each count to be served concurrently. This appeal followed.

Gordon first contends that the district court erred by concluding that he failed to establish a prima facie *Batson* violation based on the prosecutor's use of two of his six peremptory strikes to exclude black venirepersons from the petit jury. In *Batson*, the Supreme Court held that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. The defendant must point to facts and circumstances which raise an inference of racial discrimination. *Id.* "[A] 'pattern' of strikes against black jurors ... might give rise to [such] an inference," and a prosecutor's statements during jury selection "may support or refute an inference of discriminatory purpose." *Id.* at 97, 106 S.Ct. at 1723.

■ We review a district court's determination of whether a defendant has established a prima facie *Batson* violation under the clearly erroneous standard. *United States v. Moore*, 895 F.2d 484, 485 (8th Cir.1990). Here, the district court correctly found that Gordon had failed to establish a prima facie case because the prosecutor used only two of his six challenges to strike black jurors and three blacks remained on the petit jury after both parties exercised their challenges. *See United States v. Young–Bey*, 893 F.2d 178, 180 (8th Cir.1990) (no prima facie *Batson* violation when prosecutor used two peremptories to strike black venirepersons, but two blacks served on petit jury and one served as an alternate); *United States v. Fuller*, 887 F.2d 144, 146–47 (8th Cir.1989) (no prima facie *Batson* violation when prosecutor used two strikes to exclude black venirepersons, but three blacks remained on petit jury), *cert. denied*, 496 U.S. 908, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990). Gordon argues that because one of the excluded venirepersons made no statements during voir dire, it is reasonable to infer that she was excluded on the basis of her race. We rejected this precise argument in *Young–Bey*. 893 F.2d at 179–82. Additionally, the record indicates that the other excluded venireperson's sons had experienced drug problems in the past. This is a sufficient reason for exercising a peremptory challenge to exclude her. *See United States v. Hoelscher*, 914 F.2d 1527, 1540–41 (8th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2240, 114 L.Ed.2d 482 (1991).

■ Gordon next argues that the district court erred by denying his motion for a judgment of acquittal on the ground of insufficient evidence. He maintains that Noel's testimony was inherently incredible, and that Noel's extensive criminal history combined with the arrangements he made with the government to avoid prosecution so undermined his credibility that no reasonable jury would have believed his testimony. We review the district court's denial of a motion for acquittal based on insufficient evidence by viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences which may be drawn from it. *United States v. Calkins*, 906 F.2d 1240, 1247 (8th Cir.1990). We will reverse only "if the evidence is such that reasonably-minded jurors *must* have a reasonable doubt as to the existence of any of the essential elements of the offense." *United States v. Powell*, 853 F.2d 601, 604 (8th Cir.1988). Moreover, "[i]t is the sole province of the jury to weigh the credibility of a witness." *United States v. Martinez*, 958 F.2d 217, 218 (8th Cir.1992). Our review of the record reveals that Noel's testimony was sufficient to establish Gordon's guilt on each of the two counts. Also, it was corroborated in many respects by Mendrela. Defense counsel vigorously attacked Noel's credibility on cross-examination, but the jury apparently found him more believable than Gordon. We decline to disturb the jury's credibility assessment.

Finally, Gordon maintains that he is entitled to resentencing because the district court mistakenly believed the Guidelines provided for a sentence of 27 to 33 months on each distribution count, when, in fact, the two counts had to be grouped together and the sentence calculated based on the total amount of heroin involved in both. "A sentence imposed within the applicable guidelines range is reviewable only if it is imposed in violation of the law or as a result of an incorrect application of the guidelines." *United States v. Onwuemene*, 933 F.2d 650, 651 (8th Cir.1991). The Guidelines establish a procedure for determining the offense level when a defendant is convicted of multiple counts. The first step is to group the counts resulting in conviction by applying the rules set forth in section 3D1.2. Next, the offense level applicable to the group must be calculated pursuant to section 3D1.3. *See* U.S.S.G. § 3D1.1(a)(1), (2). Drug offenses covered by U.S.S.G. § 2D1.1 are to be grouped under U.S.S.G. § 3D1.2(d). "In the case of counts grouped together pursuant to § 3D1.2(d), the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two." U.S.S.G. § 3D1.3(b).

■ Here, as the PSR noted, U.S.S.G. § 2D1.1(c)(13) provides for a base offense

level of 18 for offenses involving more than 20 and less than 40 grams. Gordon was convicted of selling 37 grams of heroin. Accordingly, his sentencing range was 27 to 33 months based on the aggregate amount of heroin involved in both sales, not 27 to 33 months for each sale, as the district court believed. Nevertheless, we may affirm if the record indicates that the district court would have imposed the same sentence despite its erroneous view of the law. *See Onwuemene*, 933 F.2d at 652; *United States v. McConnell*, 903 F.2d 566, 572 (8th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991); *see also United States v. Plaza-Garcia*, 914 F.2d 345, 347–48 (1st Cir.1990). We cannot conclude, based on this record, that the district court would have imposed the same sentence had it not mistakenly believed that Gordon was subject to a sentence of 27 to 33 months on each count. The sentencing transcript reveals that the court felt it was giving Gordon a break by sentencing him at the high end of the range on each count and ordering those sentences to run concurrently instead of consecutively.

Accordingly, we affirm Gordon's convictions, but remand for resentencing. On remand, the district court is free to impose any sentence within the guidelines range it deems appropriate.

HEANEY, Senior Circuit Judge, dissenting.

I join the majority's holdings on the sufficiency of the evidence and sentencing issues. Unlike the majority, however, I would remand this case because I believe that Gordon established a prima facie *Batson* violation.

In my opinion, an inference of racial discrimination is raised any time a prosecutor exercises a peremptory strike against a venireperson who is a member of a protected class. Some district courts currently require prosecutors to state a reason for such peremptory strikes; others do not. Counsel at oral argument noted that even within districts, judges differ in their approach to peremptory strikes.

In the interest of consistency and fairness, our court should establish a "bright line" rule requiring the prosecutor to state a reason for each peremptory strike of a venireperson in a protected class. Such a rule would be consistent with the letter and spirit of *Batson*, which noted that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)).

Consistent application of this rule by the district courts would not place an undue burden on the prosecutor. Counsel for the government stated at oral argument that because many district courts routinely require the prosecutor to state a reason for striking black venirepersons, he is always prepared to explain his reasons for making a peremptory strike.

Finally, employing this "bright line" rule would reduce the number of appeals to our court on this issue. It is entirely possible that the prosecutor in this case had valid reasons for striking both black venirepersons. Had he stated those reasons, Gordon might not have appealed his conviction, and my dissent would not be necessary. Because the district court did not require the prosecutor to explain his peremptory strikes, I would remand this case for a hearing on the issue in order to permit the prosecutor to do so.