**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary Allen KELLY, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Gary Allen KELLY, Defendant–Appellee.**

**Nos. 92–2347, 92–2492.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1992.

Decided April 1, 1993.

Thomas H. Shiah, Minneapolis, MN, argued, for defendant-appellant.

Jeanne J. Graham, Asst. U.S. Atty., Minneapolis, MN, argued (Jon M. Hopeman, Asst. U.S. Atty., on the brief), for plaintiff-appellee.

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges and BENSON,* Senior District Judge.

BENSON, Senior District Judge.

Defendant Gary Allen Kelly appeals his conviction for violation of 18 U.S.C. §§ 2, 371, and 2423. He also appeals from the enhancement of his sentence. U.S.S.G. § 2G1.2(b)(1). The United States has cross appealed the district court's decision to disregard defendant's conduct relative to victim I.L.B., for purposes of computing defendant's sentence.

Kelly's conviction is affirmed. The case is remanded to the district court to reconsider whether defendant's conduct relative to victim I.L.B. should be considered in the imposition of defendant's sentence.

### Statement of the Case

Defendant Kelly and three codefendants, James Franklin Patten, Herman Lee Gordon and Ronnie Lee Nelson, were charged in a six count indictment with transporting and conspiring to transport females under the age of eighteen in interstate commerce with the intent that the minors engage in prostitution, a violation of 18 U.S.C. § 2423. Codefendants Patten and Gordon each pled guilty to the charge of transporting a minor across state lines with the intent that the minor engage in prostitution. Codefendant Nelson pled guilty to aiding and abetting codefendant Kelly in the transportation of two minor females, C.L.F. and S.R.W., across state lines with the intent that the minors engage in prostitution. Kelly was charged under Counts I, IV and VI. He entered a plea of not guilty, and was brought on for jury trial. The jury was unable to reach a verdict on Count I, which charged Kelly with transporting I.L.B., a female under the age of 18, in interstate commerce to Chicago, Illinois, with the intent that I.L.B. engage in prostitution. Count IV charged Ronnie Lee Nelson and Gary Allen Kelly, a/k/a Frenchie, with having aided and abetted each other in having knowingly transported C.L.F. and S.R.W., females under the age of 18, in interstate commerce to Chicago, Illinois, with the intent that C.L.F. and S.R.W. engage in prostitution, a violation of 18 U.S.C. §§ 2 and 2423. Count VI charged Kelly and the three codefendants Patten, Nelson and Gordon with conspiracy to violate 18 U.S.C. § 2423. Counts II, III and V did not implicate Kelly.

Kelly was convicted on Counts IV and VI, and sentenced to the Bureau of Prisons for imprisonment for 112 months, to be followed by three years of supervised release. On appeal, Kelly contends the court erred in finding that he used force, threats, or drugs to coerce minors into prostitution, that being the basis for enhancing his sentence. He further contends that the evidence was insufficient to support the jury finding of a conspiracy and that evidence was presented to the jury which, in absence of proof of a conspiracy, was hearsay. The government has filed a cross appeal on the decision of the district court not to include

---

* The Honorable Paul Benson, Senior United States District Judge for the District of North Dakota, sitting by designation.

Kelly's use of force and coercion against I.L.B. in the computation of the total enhancement of defendant's sentence.

The evidence presented to the jury against defendant Kelly on each of Counts IV and VI was substantial, and when believed by the jury is clearly sufficient to support a verdict of guilty beyond a reasonable doubt.

### Applicable Law

■ Defendant's first assignment of error challenges the district court's determination pursuant to U.S.S.G. § 2G1.2(b)(1) that a four level enhancement was appropriate for defendant's conduct in relation to victims K.M.E., C.L.F. and S.R.W. Section 2G1.2(b)(1) provides; "If the offense involved the use of physical force, or coercion by threats or drugs or in any manner, increase by 4 levels." *Id.* This court must accept the trial court's findings of fact unless those findings are clearly erroneous. *United States v. Cornelius,* 931 F.2d 490, 493 (8th Cir.1991); *United States v. Lawrence,* 915 F.2d 402, 405 (8th Cir.1990).

The defendant's next assignment of error alleges an insufficiency of evidence adduced at trial to sustain a conspiracy conviction. Where a jury has returned a verdict of guilty, a court in its determination of whether the evidence is sufficient to support the verdict, must:

> [V]iew[ ] the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict. A conviction may be based on circumstantial as well as direct evidence. . . . The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt.

*United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.1992) (citations omitted). A conspiracy is "an agreement to commit an offense against the United States, along with an act by one or more of the conspirators to effect the object of the conspiracy." *United States v. Powell,* 853 F.2d 601, 604

(8th Cir.1988). In addressing that which constitutes the "agreement" element of conspiracy, this court has stated:

> The agreement need not be formal or express, and may consist of nothing more than tacit understanding. The existence of the agreement may be shown by circumstantial evidence, including the conduct of the conspirators and any attending circumstances, particularly circumstances indicating that the defendants acted in concert to achieve a common goal.

*United States v. Hermes,* 847 F.2d 493, 495 (8th Cir.1988) (per curiam) (quoting *United States v. Pintar,* 630 F.2d 1270, 1275 (8th Cir.1980)). This court has also noted that, "[s]eemingly innocent acts, taken individually may indicate complicity when viewed collectively and with reference to the circumstances in general." *United States v. Powell,* 853 F.2d 601, 604 (8th Cir.1988) (quoting *United States v. Marianai,* 725 F.2d 862, 865–66 (2d Cir.1984)).

Defendant, in his third assignment of error, alleges the trial court erred when it conditionally admitted out of court statements of alleged co-conspirators and then denied defendant's motion for a mistrial based on defendant's allegation that the government failed to prove a conspiracy.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). An exception to the general rule is provided in those situations where, "A statement [is made] by a co-conspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). This exception is applicable where the government has demonstrated that: "(1) a conspiracy existed; (2) the defendant and declarant were part of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy. *United States v. Eisenberg,* 807 F.2d 1446, 1453 (8th Cir.1986) (citing *United States v. Lewis,* 759 F.2d 1316, 1338–39 (8th Cir.1985); *United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir.1978)). In support of these ele-

ments, the government may provide circumstantial evidence, but must provide evidence independent of the challenged statements. *Eisenberg* 807 F.2d at 1453 (citing *United States v. Deluna*, 763 F.2d 897, 908–09 (8th Cir.), *cert. denied sub nom., Thomas v. United States*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336·(1985)).

■ The determination by a trial court that the necessary elements have been met for inclusion of hearsay pursuant to the co-conspirator exception is reviewed under the clearly erroneous standard. *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987); *United States v. Kocher*, 948 F.2d 483, 485· (8th Cir.1991).

On September 17, 1992, this court sitting en banc, held that a district court's consideration of relevant conduct, as envisaged by U.S.S.G. § 1B1.3, in the imposition of sentence, was authorized by statute and does not violate a defendant's right to due process. *United States v. Galloway*, 976 F.2d 414 (8th Cir.1992).

### Evidence

The evidence in the case reveals that during the summer of 1989, I.L.B., a female 16 years of age, ran away from a group home where she was receiving chemical dependency treatment and made her way to Minneapolis. There she met defendant Patten who befriended her and introduced her to his uncle, defendant Kelly. She had no place to stay, and she accepted their suggestion that they go to a motel. The three of them went to the motel. At the motel she was told that to pay for the room she had "to sleep with three men" whom Kelly had arranged to come to the motel. When she failed to respond, Kelly threatened to beat her. After the threat, she engaged in sexual intercourse with each of three "clients," who came into the bedroom one at a time. Kelly listened to the activity from the adjacent bathroom. The money for her services was paid to, and retained by Kelly. At trial, I.L.B. testified that she had not engaged in prostitution prior to this occasion.

After the first night, Kelly took her to an apartment complex in Minneapolis known as Cedar Square West Apartments, for the purpose of selling her services as a prostitute. Kelly, with I.L.B. at his side, would knock on different apartment doors and ask the occupant if he was interested in I.L.B.'s services as a prostitute. This daily routine lasted approximately a week and a half. The money for the services was paid to Kelly.

I.L.B. testified that she later accompanied Kelly to Chicago. The money for the trip was obtained through her services as a prostitute. She was brought to an apartment complex in Chinatown and Kelly used the same procedure that he had used in Minneapolis. I.L.B. testified that while in Chicago, Kelly threatened her with needles and drugs and knocked her around a couple of times. I.L.B. also testified that Kelly obtained false identification for her and dyed her hair from brown to blonde. I.L.B. testified she gave Kelly all the money she received for her services "so I wouldn't get beat up or knocked around."

On August 10, 1989, I.L.B., with the assistance of one of her customers, was able to contact her family and return to her home in Minnesota. She reported her activities to the police. A subsequent investigation uncovered a prostitution ring involving several girls and numerous defendants.

K.M.E. was a 15 year old minor who prostituted for Kelly in Chicago. Evidence at trial revealed that on several occasions Kelly and Patten, accompanied by K.M.E., would work together in soliciting the services of K.M.E. as a prostitute. The evidence further showed that K.M.E., after returning from Chicago to Minneapolis, became associated with codefendant Gordon. Gordon arranged, after consulting with Kelly, to bring K.M.E. back to Chicago for the purpose of having her engage in prostitution. Once back in Chicago, Kelly, Gordon and K.M.E. returned to ·the Chinatown apartment building where they had previously taken I.L.B., and K.M.E.'s services as a prostitute were again sold. On an occasion when K.M.E. experienced stomach cramps that interfered with her activities

as a prostitute, Kelly provided her with heroin to encourage her to continue. Kelly contends that K.M.E. used drugs before, during and after her contact with him, and that the court's enhancement of his sentence on the basis of drugs provided to K.M.E. was error.

Patten, Gordon, and Kelly were also involved with three additional minor females. Seventeen year old C.L.F., fifteen year old S.R.W., and seventeen year old D.L. were run-aways who had found their way to Minneapolis. They soon found themselves in a downtown Minneapolis apartment maintained by a friend of Kelly's. After discussing prostitution with the girls, Kelly arranged for three men to come to the apartment. They were serviced by the girls and Kelly kept the money that was paid for their services. There is evidence in the record that when C.L.F. refused to work for Kelly, he threatened her, pushed her and struck her. As a result of Kelly's abusive behavior, C.L.F. went to the apartment of codefendant Nelson, which was in the same building, and worked as a prostitute for him. On several occasions, C.L.F. went to the Cedar Square complex with D.L., S.R.W., Nelson and Kelly. On these occasions, it was Kelly who would take the girls to the rooms, set the price and collect the money.

Kelly and Nelson subsequently drove C.L.F. and S.R.W. to Chicago in D.L.'s car. In Chicago, the group went to an apartment complex in Chinatown. Nelson would stay in the car while Kelly, with S.R.W. and C.L.F., would go door to door "shopping" the girls to prospective customers. The group stayed in Chicago for approximately a week while making daily trips to the apartment complex.

S.R.W. did not testify at trial but a written statement that she had provided to the Minneapolis police department was received by the court at sentencing and was considered for the enhancement of Kelly's sentence. In that statement, which was taken only two months after the alleged conduct took place, she stated Kelly had introduced her to crack cocaine and provided her with heroin. She also stated that Kelly had beat her up "real bad." The statement was not given for the purpose of using it at trial in lieu of personal appearance. She was voluntarily reporting to the Minneapolis police her experience in Chicago working for Kelly. The trial court found that other trial evidence corroborated the statement and that it had a sufficient indicia of reliability to support its probable accuracy for use in passing sentence.

### Statement of Issues

Appellant has presented two issues on appeal, the second of which incorporates a third. As hereinbefore indicated, he contests the enhancement of the sentence and he contends the evidence introduced at trial was insufficient to sustain a conviction for conspiracy. He further contends that in the absence of a conspiracy, much of the testimony presented by the government would be hearsay and inadmissible. On cross appeal, the district court's failure to consider victim I.L.B. for purposes of sentencing enhancement is challenged by the government.

### Conviction

■ The determination by a trial court that the necessary elements have been met for inclusion of hearsay pursuant to the co-conspirator exception is reviewed under the clearly erroneous standard. *Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987); *United States v. Kocher,* 948 F.2d 483, 485 (8th Cir.1991). In light of this standard of review, we cannot conclude that the district court erred in admitting the challenged evidence. Denial of the motion for a mistrial was proper. Reviewing the evidence in the light most favorable to the government we hold that the evidence was sufficient to support the conviction for conspiracy, and for transporting females under the age of eighteen in interstate commerce with the intent that the minors engage in prostitution.

### Sentence

In resolving any reasonable dispute concerning a factor important to the sentenc-

ing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy. U.S.S.G. § 6A1.3(a). "[T]he determination of whether hearsay is sufficiently reliable to warrant credence for sentencing purposes necessarily depends upon the particular circumstances of each case." *United States v. Wise*, 976 F.2d 393, 403 (8th Cir.1992) (en banc).

■ The district court's findings of fact when applying the sentencing guidelines are to be accepted unless clearly erroneous. 18 U.S.C. § 3742(e)(4); *United States v. Cornelius*, 931 F.2d 490, 493 (8th Cir.1991); *United States v. Lawrence*, 915 F.2d 402, 405–06 (8th Cir.1990). If the offense involved the use of physical force or coercion by threats or drugs in any manner, the base offense level is increased by four levels. U.S.S.G. § 2G1.2(b)(1). Whether a provision of the guidelines manual was correctly applied is reviewed *de novo*. *United States v. Gullickson*, 981 F.2d 344, 346 (8th Cir.1992); *United States v. West*, 942 F.2d 528, 530 (8th Cir.1991); *United States v. Werlinger*, 894 F.2d 1015, 1016 (8th Cir.1990). Reviewing the record before us, we conclude the district court's enhancement of the base offense level pursuant to U.S.S.G. § 2G1.2(b)(1), arising out of defendant's treatment of victims K.M.E., C.L.F. and S.R.W., is supported by substantial evidence. Its findings of fact thereon are not clearly erroneous.

### Cross–Appeal

At the time of sentencing the district court ruled that it was not going to consider Kelly's "relevant conduct" against I.L.B. in its determination of Kelly's base offense level enhancement. At that time the appropriate role, if any, of relevant conduct in the imposition of a sentence had not been clearly settled in this circuit. The district court, at the time of sentencing, was without the benefit of this court's decision in *United States v. Galloway*, 976 F.2d 414 (8th Cir.1992) (en banc).

### Conclusion

Defendant's conviction on counts IV and VI charging violation of 18 U.S.C. §§ 2, 371, and 2423 is affirmed.

The case is remanded to the district court to reconsider its prior determination that defendant's use of force and coercion against I.L.B., as disclosed by the evidence in the case, should not be considered in the computation of the enhancement of the sentence. If additional enhancement is found to be appropriate, defendant shall be resentenced accordingly.