**UNITED STATES of America, Appellee,**

**v.**

**Arthur L. MITCHELL, Appellant.**

**Nos. 93–3045, 93–3304.**

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1994.

Decided July 29, 1994.

**630**

Kathleen K. Woods, Kansas City, MO, argued (Byron Fox, on the brief), for appellant.

William L. Meiners, Kansas City, MO, argued, for appellee.

Before BOWMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BOWMAN, Circuit Judge.

Arthur L. Mitchell was found guilty by a jury of one count of structuring a financial transaction to evade currency reporting requirements in violation of 31 U.S.C. § 5324(3) (1988)[1]. The District Court[2] sentenced Mitchell to thirty months of imprisonment, one year of supervised release, a fine of $5,000, and a special assessment of $50. On appeal, Mitchell challenges both his conviction and his sentence. We affirm.

### I.

The charges that led to Mitchell's conviction were initiated following an Internal Revenue Service (IRS) investigation into the criminal activities of Gilbert Dowdy. Dowdy is a former Kansas City, Missouri fire captain and a convicted drug dealer. Mitchell, a former fireman, is a licensed real estate agent and a friend of Dowdy.

In June 1987, Mitchell, acting in his capacity as a real estate agent, showed Dowdy a piece of property for sale at 7209–7211 Troost (the Troost Property). In December 1987, Mitchell executed two sales contracts in his own name for the Troost Property. The first contract listed the purchase price at $15,000; the second contract reflected the true purchase price of $62,000. Mitchell filed

only the $15,000 contract with the title company.

Prior to closing, Mitchell delivered two payments to the seller. These cash payments, which totalled approximately $47,000, were made in small denominations delivered in paper and plastic bags. At closing, Mitchell tendered the balance of $14,910 in the form of two cashier's checks. The first check, in the amount of $9,000, was purchased with cash from Mercantile Bank. The second, in the amount of $5,910, was purchased with cash from Commerce Bank of Kansas City. Mitchell purchased both checks on December 18, 1987. The Commerce Bank facility where Mitchell purchased the second check is located two blocks from the Mercantile Bank branch were he purchased the first check.

These cashier's-check transactions formed the basis for the charge against Mitchell under 31 U.S.C. § 5324(3), which makes structuring a transaction with a financial institution to evade the financial institution's currency reporting requirements an unlawful act. *See* 31 U.S.C. § 5313(a) (1988); 31 C.F.R. § 103.22(a)(1) (1993). Mitchell was convicted by a jury of this charge after a two-day trial. At the trial, the government introduced evidence concerning Dowdy's criminal activities and the relationship between Dowdy and Mitchell. At sentencing, the District Court adjusted Mitchell's base offense level upward by four levels under U.S.S.G. § 2S1.3(b)(1) (Nov. 1992), finding, based on the evidence at trial, that Mitchell knew the funds used to purchase the cashier's checks were derived from criminal activities. Mitchell then filed a timely appeal.

In his appeal, Mitchell argues that the District Court abused its discretion by admitting evidence of Dowdy's involvement in drug trafficking, exhibits demonstrating Dowdy's exorbitant lifestyle, and out-of-court statements made by Dowdy. He further contends that the evidence is insufficient to conclude that he violated 31 U.S.C. § 5324(3). Finally, Mitchell argues that the District Court

---

1. Subsequent to Mitchell's conviction, § 5324(1)–(3) was redesignated as § 5324(a)(1)–(3) without substantive change. 31 U.S.C. § 5324 (Supp. IV 1992).

2. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

erred in enhancing his offense level under U.S.S.G. § 2S1.3(b)(1).

## II.

### A.

Mitchell first renews the argument he made at trial that the evidence admitted by the District Court establishing Dowdy's involvement in narcotics trafficking and Dowdy's exorbitant lifestyle is irrelevant under Federal Rule of Evidence 401. Alternatively, Mitchell contends that if relevant, the evidence should have been excluded under Rule 403 because its probative value was substantially outweighed by its prejudicial effect. We accord great deference to the District Court's rulings on the admissibility of evidence, including its application of the Rule 403 balancing test, and will reverse only if the court committed a clear abuse of discretion. *United States v. Sparks*, 949 F.2d 1023, 1026 (8th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1987, 118 L.Ed.2d 584 (1992); *United States v. Jackson*, 914 F.2d 1050, 1053 (8th Cir.1990).

At trial, the government maintained that Mitchell and Dowdy were involved in a scheme to launder drug money, asserting that Mitchell purchased the Troost Property in his name to hide the asset from government agents investigating Dowdy and to facilitate avoidance of drug forfeiture laws if Dowdy were convicted of a drug-trafficking offense. The government also asserted that Mitchell used cash to make downpayments on the Troost Property and to purchase the cashier's checks to aid Dowdy in laundering his drug proceeds. The government offered the evidence concerning Dowdy's drug activities (and Mitchell's knowledge of those activities) to demonstrate Mitchell's intent to structure a financial transaction to avoid currency reporting requirements and to establish his motive for doing so. This evidence thus was relevant to the charge against Mitchell. Furthermore, the evidence was highly probative and not unfairly prejudicial, and the District Court did not abuse its discretion in declining to exclude the evidence under Rule 403.

### B.

Mitchell next argues that the District Court abused its discretion by admitting into evidence out-of-court statements made by Dowdy concerning his ownership of the Troost Property. Mitchell contends that the statements did not meet the Federal Rule of Evidence 801(d)(2)(E) requirements for admission. We agree but find only harmless error.

Rule 801(d)(2)(E) is the coconspirator exception to the hearsay rule. "As a general rule, statements made by a coconspirator in furtherance of the unlawful association ... are properly admissible against all conspirators, whether or not a conspiracy is actually charged." *United States v. Roach*, 28 F.3d 729, 736–37 (8th Cir.1994) quoting *United States v. Frol*, 518 F.2d 1134, 1136 (8th Cir. 1975). Before admitting the disputed statements, the District Court must find by a preponderance of the evidence that a conspiracy existed to which the declarant and the defendant were parties and that the statements were made in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987); *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir.1978).

As proof that Dowdy and Mitchell were involved in a scheme to launder Dowdy's drug money, the government offered evidence demonstrating that Dowdy was the true owner of the Troost Property. Part of this proof consisted of the testimony of two witnesses regarding out-of-court statements made by Dowdy. Sheri Ellison, Dowdy's girlfriend and the operator of a hair salon later opened on the Troost Property, testified that Dowdy told her that he purchased the Troost Property in Mitchell's name. Brent Neely, an interior designer, testified that Dowdy hired him to remodel the Troost Property and that Dowdy stated that he (Dowdy) was the owner of the Troost Property. Based on these hearsay statements and other evidence, the District Court found that the government had established by a preponderance of the evidence that Dowdy and Mitchell were involved in a conspiracy to launder money and to structure a financial

transaction to evade the currency reporting requirements. The District Court, however, neglected to make a finding that these statements were made in furtherance of the conspiracy.

▮ A statement that simply informs a listener of the declarant's criminal activities is not made in furtherance of the conspiracy; instead, the statement must "somehow advance the objectives of the conspiracy." *United States v. DeLuna,* 763 F.2d 897, 909 (8th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985) (internal quotation marks omitted). We fail to discern how Dowdy's utterance of these statements furthered the objects of the conspiracy in which he and Mitchell were participating. Neither Ellison nor Neely were involved in the scheme to purchase the house. Indeed, these statements were made well after the transaction was final. The District Court thus committed an abuse of discretion by admitting these hearsay statements into evidence.

▮ Nevertheless, we believe the error to have been harmless. An evidentiary error amounts to harmless error if, after viewing the entire record, the reviewing court determines that no substantial rights of the defendant were affected, and that the error had no, or only slight, influence on the verdict. *United States v. DeAngelo,* 13 F.3d 1228, 1233 (8th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2717, 129 L.Ed.2d 842 (1994); Fed.R.Crim.P. 52(a). After careful scrutiny of the record, we find that admission of the hearsay statements affected none of Mitchell's substantial rights, and that the error had no, or only slight, influence on the verdict.

Excluding the hearsay statements from our analysis, we find that the government introduced ample competent evidence from which the jury could conclude beyond a reasonable doubt that Mitchell violated 21 U.S.C. § 5324(3). This evidence demonstrated that (1) Mitchell, a licensed real estate broker, executed two contracts for a single piece of property, an act he knew to be illegal; (2) one of these contracts substantially understated the purchase price, and Mitchell filed only that contract with the title

company; (3) Mitchell paid the sellers of the Troost Property $47,000 in cash in small denominations delivered in paper or plastic bags; (4) Dowdy was a drug dealer and often had large amounts of cash on hand; (5) Mitchell purchased two cashier's checks on the same day in a total amount exceeding the amount requiring a currency transaction report; (6) the banks from which Mitchell purchased the cashier's checks were within two blocks of one another; (7) Mitchell delivered the cashier's checks to the seller, thus completing payment of the purchase price of the Troost Property; (8) the currency reporting requirements are well known in the real estate community; (9) Mitchell paid $62,000 for the Troost Property although he earned only a total of $84,753 from 1984 through 1989; (10) Dowdy treated the Troost Property as his own as evidenced by the fact that the purchaser's receipts for the cashier's checks used to buy the Troost Property were found in Dowdy's home, Dowdy contracted and paid thousands of dollars for the remodeling of the interior of the Troost Property, Dowdy activated the utilities at the Troost Property, and Dowdy's name was on the Kansas City Power and Light Company records as owner; and (11) Dowdy had good reason for wanting to hide his ownership of the Troost Property and for seeking to evade the currency reporting requirements because of his illegal drug activities. Thus, the inadmissible hearsay statements testified to by Ellison and Neely were merely cumulative and of little or no consequence in light of the plethora of competent evidence.

### III.

▮ Mitchell next argues that the evidence is insufficient to permit a jury to find him guilty of violating 31 U.S.C. § 5324(3). Specifically, Mitchell contends that the government failed to prove sufficiently that he was aware of the currency reporting requirements and that he purchased the cashier's checks with the purpose of evading those requirements. When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the government, granting the government the benefit of all inferences that reasonably may be drawn

from the evidence. *United States v. Johnson*, 12 F.3d 827, 831 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 1860, 128 L.Ed.2d 482 (1994). "[W]e will reverse only if no reasonable jury could have concluded beyond a reasonable doubt that [the defendant] was guilty of the charged offense." *Id.*

At the close of the evidence, the jury in Mitchell's case was instructed that, to return a verdict of guilty, it must find that Mitchell (1) knew that banks are required to file currency transaction reports, (2) knowingly and willfully structured a currency transaction, and (3) did so for the purpose of evading the currency transaction reporting requirements.[3] As we noted in Part II, *supra,* the government introduced more than sufficient evidence to support the jury's verdict. The preceding discussion thus disposes of Mitchell's sufficiency-of-the-evidence claim.

## IV.

■ Finally, Mitchell challenges his sentence, arguing that the District Court erred by enhancing his base offense level pursuant to U.S.S.G. § 2S1.3(b)(1) *for using funds* which he knew or believed to be criminally derived. The District Court found, based on the evidence at trial, that the government had established by a preponderance of the evidence that Mitchell knew that Dowdy was a drug dealer and that the money used to purchase the cashier's checks was derived from Dowdy's illegal activities. We review the District Court's factual determinations for sentencing purposes under the clearly erroneous standard. *United States v. Kelly,*

989 F.2d 980, 985 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 206, 126 L.Ed.2d 163 (1993).

We find abundant evidence in the record upon which the court properly could base its finding, including that Mitchell had enjoyed a long friendship with Dowdy; that Mitchell had visited the home of one of Dowdy's girlfriends, Vicky Nixon, on several occasions when significant amounts of cash and drugs were on hand; that Mitchell had been a fireman and therefore was familiar with Dowdy's earning capacity yet also was aware of Dowdy's extravagant lifestyle[4]; that Mitchell paid the bulk of the Troost Property's purchase price in cash in small denominations delivered in paper or plastic bags; and that Dowdy was the true owner of the Troost Property. Based on this and other evidence, we are satisfied the District Court's finding is not clearly erroneous.

## V.

For the reasons stated, Mitchell's conviction and sentence are affirmed.

---

**3.** This instruction was based substantially upon the law of this Circuit at the time of Mitchell's conviction. *See United States v. Gibbons*, 968 F.2d 639, 643–44 (8th Cir.1992). Recently, however, the Supreme Court held that to satisfy the "willfulness" requirement of 31 U.S.C. § 5322(a) (1988), the government must show not only that a defendant charged with violating 31 U.S.C. § 5324 knew of the reporting requirements and structured a currency transaction with the purpose to evade the reporting requirements, but also that the defendant "knew the structuring in which he engaged was unlawful." *Ratzlaf v. United States*, —— U.S. ——, ——, 114 S.Ct. 655, 663, 126 L.Ed.2d 615 (1994).

At trial and in his brief on appeal, Mitchell advanced no argument that the jury instructions were inadequate. He also failed to argue that

the government must prove that he knew that the structuring he had engaged in was unlawful. Instead, Mitchell raised this argument for the first time during oral argument before this Court. He thus has waived the issue. *See United States v. Simmons*, 964 F.2d 763, 777 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992) (restating the general rule that issues not raised in appellant's opening brief are waived).

**4.** Sheri Ellison testified that in 1987 Dowdy owned two Mercedeses, one Rolls Royce, and one Jaguar, and that Dowdy had purchased a 1987 Corvette for her. The record also reveals that in 1987 Dowdy had purchased three homes, one for himself and one for each of his two girlfriends, and that Mitchell had assisted Dowdy with the purchase of these homes.