**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

---

No. 96-2491

---

United States of America,    *
                          *
        Appellee,       *
                          * Appeal from the United States
        v.             * District Court for the
                          * Southern District of Iowa.
Lamont Gentry Falls,     *
                          *
        Appellant.     *

---

Submitted: March 13, 1997
Filed: June 27, 1997

---

Before FAGG and HEANEY, Circuit Judges, and NANGLE,[1] District Judge.

---

HEANEY, Circuit Judge.

Lamont Gentry Falls appeals his drug-related convictions. Falls primarily argues that the district court erred in admitting the testimony of a government witness who connected Falls to drugs and weapons unrelated to the drug conspiracy charged in the

---

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

indictment.[2]  Although we agree that the court abused its discretion in allowing the testimony, we find that the error was harmless and affirm Falls's convictions.

At trial, the government offered proof that Falls was a leader of an organization that distributed large quantities of cocaine and cocaine base in Des Moines, Iowa between 1989 and 1993.  Falls was convicted largely on the testimony of his co-conspirators who agreed to cooperate in this prosecution as part of their plea agreements with the government.  According to their testimony, Falls was the supply source for this Iowa drug conspiracy.  He demanded and received a larger share of the proceeds. Some of the participants, including Falls, were based primarily in California.  In addition to supplying the cocaine for distribution, Falls handled the details of transporting the large amounts of drugs and cash between California and Iowa.  Falls had distributors under him who received deliveries of cocaine at a rented apartment in Iowa.

The government called Trevor Woods as one of its witnesses.  Woods neither participated in nor had direct knowledge of the Iowa drug conspiracy.  Woods had known Falls and members of Falls's family for more than a decade, going back to when the two were in junior high school together in California.  Woods was in federal

_____

[2]Additionally, Falls contends (1) the district court erred in admitting video surveillance evidence, and (2) he was denied a fair trial by the government's knowing introduction of perjurious testimony from Falls's co-conspirators.  We have reviewed the record carefully and find neither abuse of discretion nor error of law with respect to these claims.

custody in Tulsa, Oklahoma on unrelated drug charges when he agreed to cooperate in the government's prosecution of Falls. Woods testified that he knew Falls well and saw him regularly in California. Woods told the jury that he received approximately ten kilograms of cocaine from Falls in Los Angeles during the same time period as the Iowa drug conspiracy. Woods sold the drugs he received from Falls in Los Angeles, Seattle, and unspecified cities in Oklahoma and Arkansas. Woods in no way connected

the drugs he purchased to the drugs Falls supplied for distribution in Iowa. Nor did Woods connect his drug dealings with Falls to any of the other members of the Iowa conspiracy. Woods merely testified that he knew two of Falls's alleged co-conspirators from California, that he knew that Falls was related to them, and that he did not know any others. He never indicated that he participated in any drug activity that involved Falls and any other member of the Iowa conspiracy. Woods's only testimony related to Iowa was that on one occasion when he sought to buy drugs, Falls told Woods that "they had all gotten busted in Iowa" and that "he wouldn't deal because of what happened." Woods also testified that Falls regularly carried a gun and that on one occasion Falls sold Woods a gun.

Falls objected to the admission of Woods's testimony at trial. The court admitted the evidence on the theory that it was relevant to the issue of whether Falls was a member of a conspiracy to distribute drugs in Iowa and that no rule of exclusion applied. We give deference to a district court's rulings on the admissibility of evidence and reverse only if the court committed a clear abuse of discretion. United States v. Mitchell, 31 F.3d 628, 631 (8th Cir. 1994). We hold that the court abused its discretion in admitting Woods's testimony.

The crucial issue is not whether the testimony is relevant. The Federal Rules of Evidence define relevance broadly as, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid.

4

401. There can be little question that a person's participation in one set of large-scale drug transactions tends to make it more probable that he or she would be involved in a different, large-scale drug conspiracy during the same time period.  The danger of this sort of evidence--a danger clearly recognized by the Federal Rules of Evidence--is that it distracts the trier of fact from the main question of what actually happened on a particular occasion and creates instead a reliance on the probability that the defendant acted in accordance with his or her general character or previous criminal behavior.

Thus, Rule 404(a) excludes evidence of a person's character when offered to prove action in conformity therewith on a particular occasion, and Rule 404(b) excludes evidence of other crimes or bad acts when offered to prove character in order to show action in conformity therewith.  Fed. R. Evid. 404.

By the government's own admission, the evidence was offered so the jury would infer from it that Falls was doing the same or similar things with different people in Iowa that Woods testified Falls was doing with him in California.  Woods had no information related to the Iowa conspiracy other than the fact that at a certain point Falls would not supply Woods with cocaine because, as Falls explained, "they had all gotten busted in Iowa." While it might have been within the court's discretion to admit this single statement to the jury accompanied by an appropriate limiting instruction, the vast majority of Woods's lengthy testimony falls squarely within the prohibitions of  Rule 404 and the trial court erred in admitting it.

Having found trial error, we must next consider its impact on Falls's convictions.  An evidentiary error amounts to harmless error if, after viewing the entire record, we are convinced that no substantial rights of the defendant were affected and that the error had no, or only very slight, influence on the verdict.  See, e.g., United States v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994).  For example, we have found harmless error where "the government introduced ample competent evidence from which the jury could conclude beyond a reasonable doubt" that the defendant was guilty even without the evidence that

6

should have been excluded.  <u>Id.</u>  We have reviewed the trial record carefully and conclude that, even without Woods's testimony, there is more than enough admissible evidence on which the jury could have based its finding that Falls was guilty of conspiring to distribute cocaine in Iowa.

Four of Falls's co-conspirators gave consistent testimony that Falls was the principal source for a major drug-distribution operation in Iowa.  Falls masterminded the transport of drugs and cash between California and Iowa by hiding them inside the

spare tires of various vehicles that were driven back and forth by different participants.  Falls demanded $5,000 contributions from two of the witnesses to pay their share of the cost of a mobile home that was used to transport the cocaine and currency.  In addition to this co-conspirator testimony, the jury was presented with substantial corroborating evidence from other witnesses familiar with the organization and its members, including extensive testimony from the FBI agent in charge of the investigation.  Given the strength of the evidence against Falls, we are convinced that Woods's testimony had little if any effect on the jury's verdict.  Therefore, we hold that the admission of his testimony was harmless and affirm the convictions.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.