# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3056

_____

United States of America,

        Appellee,

v.

Timothy B. Wilder,

        Appellant.

_____

No. 08-3265

_____

United States of America,

        Appellee,

v.

Lawrence Verl Smith,

        Appellant.

Appeals from the United States
District Court for the
Southern District of Iowa.

_____

No. 08-3565
_____

United States of America,      *

      Appellee,      *

        *

v.      *

      *

Andre L. Williams,      *

      *

      Appellant.      *


_____

No. 08-3570
_____

United States of America,      *

      *

      Appellee,      *

      *

v.      *

      *

Willie Curry, Jr.,      *

      *

      Appellant.      *


_____

Submitted:  October 22, 2009
Filed:  March 10, 2010
_____

Before COLLOTON and BENTON, Circuit Judges, and PIERSOL,[1] District Judge.
_____

COLLOTON, Circuit Judge.

These consolidated appeals arise from judgments entered in a criminal case that originated with a multi-defendant indictment alleging a conspiracy to distribute cocaine and related charges in the Southern District of Iowa. The case against four defendants proceeded to trial, and appellant Lawrence Smith pled guilty after opening statements to one count of maintaining a drug-involved premises, in violation of 21 U.S.C. § 856. The district court[2] sentenced him to 51 months' imprisonment. Appellants Timothy Wilder, Andre Williams, and Willie Curry, Jr., were convicted by a jury on all counts charged. Williams was found guilty on one count of conspiracy to distribute cocaine, two counts of opening and maintaining a drug-involved premises, and one count of distributing cocaine. Wilder was convicted on one count of conspiracy, one count of opening and maintaining a drug-involved premises, and two counts of distribution. Curry was found guilty on one count of conspiracy and two counts of distribution. The district court sentenced Wilder to 360 months', Williams to 292 months', and Curry to 137 months' imprisonment, respectively.

Williams and Curry challenge their convictions based on sufficiency of the evidence and alleged trial-related errors. Williams, Wilder, and Smith appeal their sentences. We affirm.

___

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

Viewed in the light most favorable to the verdict, the evidence at trial showed a drug trafficking operation based at 206 East 12th Street and 809 Perry Street in Davenport, Iowa, during 2006 and 2007. The Perry Street apartment was rented by Williams and Amber Self, and it was used for the division and packaging of cocaine. The 12th Street apartment, occupied by Tony Hauschild and owned by Smith, served as the distribution center.

Williams played a leadership role in the distribution ring, buying crack cocaine from out-of-town suppliers and overseeing its packaging at Perry Street and sale from the 12th Street apartment. Williams also introduced new members to the conspiracy and established them at the 12th Street apartment to make sales. One of these people was Timothy Wilder, whom Williams installed as the supervisor of the sales operation there.

In the spring of 2006, a confidential informant introduced Curry to Special Agent Matthew Allers of the Iowa Division of Narcotics Enforcement, who was posing as a would-be drug purchaser. On two occasions, Curry sold crack cocaine to Special Agent Allers, and agents arrested Curry on February 8, 2007. The government relied on Curry's post-arrest statement, his cell phone and phone records, and recent residence in an apartment at 206 East 12th Street to link him to members of the conspiracy.

In March 2007, surveillance officers observed Williams leave 809 Perry Street carrying two duffel bags and enter a waiting Cadillac driven by William Combs. After the car drove away, officers executed a traffic stop and searched the car with consent. They found a digital scale and more than $5000 in cash, most of which was stored in the duffel bags. The officers also confiscated Williams's key ring, which included a key to Apartment 5 at 809 Perry Street. The officers went to 809 Perry

Street, obtained consent to search, and proceeded to search the unit. In a locked closet, opened by another key on Williams's ring, officers found several empty prescription pill bottles. Knowing that drug traffickers often use the corners of plastic baggies to package rocks of crack cocaine, the officers seized thirty-two baggies with corners missing from a trash receptacle, and they found other materials often used for packaging drugs.

In April 2007, Special Agent Allers, working undercover, made two purchases of crack cocaine from 206 East 12th Street. Wilder furnished the crack cocaine that Allers obtained in his first undercover purchase, and Wilder pocketed the money. Later that month, police arrested Wilder after a search of a vehicle in which Wilder was riding uncovered several crack pipes and a small amount of crack cocaine.

On May 9, 2007, Williams visited the police station in Davenport intending to retrieve money that had been seized at the time of the traffic stop in March. A warrant had been issued for his arrest, and Williams was arrested upon his arrival at the station. Two weeks later, law enforcement officers searched the residence at 206 East 12th Street, and Smith was arrested in the wake of this search.

The trial commenced on February 15, 2008, and the jury returned its verdicts on February 22. The district court imposed sentences later in the year, and these appeals followed.

II.

A.

Williams argues that the district court abused its discretion by refusing to admit three pieces of evidence that he offered at trial: (i) a recording of a post-arrest statement given by Lawrence Smith; (ii) a recording of a conversation between

Williams and Combs that took place in a squad car after the two were arrested in March 2007; and (iii) a document from the Scott County, Iowa, Attorney's Office that ordered law enforcement officers to return to Williams the money seized from him at the time of his arrest. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Espinosa*, 585 F.3d 418, 430 (8th Cir. 2009).

Williams sought to introduce portions of a recorded post-arrest statement made by Lawrence Smith on May 23, 2007. According to Williams, he sought to offer the statement by Smith to rebut incriminating trial testimony of prosecution witness Ryan Shoup about Williams's interaction with Smith. Although Williams has not furnished Smith's statement or represented that it was made part of the record as an offer of proof, he contends that Smith denied direct dealings with Williams, and that his out-of-court statements would have contradicted Shoup.

At trial, Williams suggested that the prior statement was admissible because Smith was unavailable to testify. *See* Fed. R. Evid. 804. The district court excluded the recording as inadmissible hearsay, finding that there had not been a sufficient showing of unavailability under Rule 804, that the statement was not sufficiently against penal interest to make it admissible under Rule 804(b)(3), and that there were no corroborating circumstances that established the reliability of Smith's prior statement. After Smith's attorney represented that Smith would exercise his Fifth Amendment right against self-incrimination if called as a witness, the court stated that it was persuaded of Smith's unavailability and offered to revisit its ruling if Williams offered Smith's prior statement as evidence. Williams does not point to a place in the trial when Smith's statement was offered, and we see none.

We doubt that Williams preserved this evidentiary issue for appeal, *see United States v. Elbert*, 561 F.3d 771, 775 (8th Cir. 2009), but in any event, we see no abuse of discretion in the district court's preliminary ruling. The district court properly rejected Williams's reliance on Rule 804(b)(3), because Smith's exculpatory

statements denying drug activity with Williams were not statements against interest that might be admissible under that provision. On appeal, Williams asserts that it can be reversible error to preclude defense counsel from impeaching the veracity of "hearsay declarants." *See United States v. Moody*, 903 F.2d 321, 327-30 (5th Cir. 1990). That may be true, but Shoup was a witness at trial, not a hearsay declarant. Smith's prior statement was properly excluded.

Williams next contends that the district court abused its discretion by excluding the recorded conversation between Williams and Combs in the police car after their arrests in March 2007. The statements apparently included Williams's commentary about why he was stopped by police and the perceived unfairness of the stop, as well as Williams's assertions about the source of money that was in his possession. The district court ruled that Williams's statements were hearsay, and that they were not admissible to show Williams's "state of mind," *see* Fed. R. Evid. 803(3), because state of mind was not relevant at that point.

The district court correctly determined that Williams's state of mind after his arrest was not relevant to the charges in the indictment. *See United States v. Udey*, 748 F.2d 1231, 1243 (8th Cir. 1984). Nor were Williams's exculpatory statements after arrest admissible as statements of a co-conspirator in furtherance of a conspiracy, as Williams now suggests. Federal Rule of Evidence 801(d)(2)(E) excludes from hearsay only co-conspirator statements offered "against a party," that is, against the party making the statement. *See United States v. Kapp*, 781 F.2d 1008, 1014 (3d Cir. 1986); *see also United States v. Smith*, 520 F.2d 1245, 1247 & n.2 (8th Cir. 1975). There was no abuse of discretion.

Williams also disputes the district court's refusal to admit a document that he asserts was a copy of an internal memorandum from the Davenport Police Department. Williams contends that the memorandum established a finding of the police department that the cash seized from Williams was not "seizable" drug money.

Although Williams has not furnished us with the memorandum, he seems to argue on appeal that the district court should have admitted the document as a public record in accordance with Federal Rule of Evidence 901.

Williams offered the memorandum through cross-examination of Davenport police detective Gilbert Proehl, and the government objected to the memorandum as hearsay. The court reserved ruling, and then later sustained the objection on the ground that Williams did not lay an adequate foundation.

The district court's ruling was not an abuse of discretion. Proehl was unable to verify that the proffered document was a public record created by the police department, stating only that it "appears to be a copy of a possibly genuine document." Williams's principal complaint on appeal is that the district court excluded the document on a basis not specifically raised by the government. Although the government objected based on hearsay, the court acted within its authority by noting the absence of an adequate foundation. *Maddox v. Patterson*, 905 F.2d 1178, 1180 (8th Cir. 1990); 1 Kenneth S. Broun, *McCormick on Evidence* § 55, at 282-83 (6th ed. 2006). We are at a loss, moreover, to see how Williams was prejudiced. Proehl testified that "there was an order out there at some point by the Scott County Attorney's Office to give the money back," and the substance of Williams's proffer concerning the disputed police memorandum is essentially equivalent to Proehl's statement.

B.

Williams argues that the evidence presented against him was insufficient to support the jury's verdict with respect to the distribution and conspiracy charges. We review the sufficiency of evidence supporting a conviction *de novo*, viewing all evidence in the light most favorable to the verdict. We will overturn a verdict only

if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Armstrong*, 253 F.3d 335, 336 (8th Cir. 2001).

On the distribution count, the government presented testimony from Ryan Shoup that he purchased crack cocaine from Williams on March 3, 2007, at 206 East 12th Street. If Shoup's testimony was believed, it was sufficient to establish that Williams knowingly and intentionally distributed a controlled substance. The evaluation of Shoup's credibility was within the province of the jury, and there is no basis to set aside the verdict.

On the conspiracy charge, the government was required to show that Williams knowingly and intentionally joined an agreement to distribute controlled substances. *See United States v. Hernandez*, 569 F.3d 893, 896 (8th Cir. 2009). At trial, the government presented testimony from several witnesses who identified Williams as a member and leader of the drug trafficking operation. In addition to Shoup's testimony about purchasing crack cocaine directly from Williams, Tony Hauschild testified that Williams brought Brian Dickerson and Wilder to his apartment at 206 East 12th Street and arranged for them to sell drugs there. Amber Self testified that she had purchased drugs from Williams, that Williams was in business with Combs and others, and that Williams and Combs "sat around and broke up their drugs and counted money." Sean Barnes testified that Williams regularly purchased crack from him. Clyde Arrington, the manager of the Perry Street building, testified that he purchased drugs from Williams, that he witnessed Williams conduct other drug transactions, and that he was present when Williams instructed Self to hand over a quantity of crack cocaine to Arrington as partial payment of their rent. Crystal Babcock testified that Williams brought his friend Dickerson to Davenport from Chicago to sell crack. She and Angie Ireland testified that they transported crack cocaine at Williams's direction from Perry Street to East 12th Street for sale at that location. When Williams was arrested on March 7, 2007, he was carrying over $5000 and keys to an apartment in which police found drug packaging materials.

-9-

Williams urges that much of this evidence is unreliable, because many of the witnesses testified pursuant to plea agreements and stood to gain by offering testimony that supported the government's theory of the case. Again, however, "[t]he jury is the final arbiter of the witnesses' credibility," *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004), and Williams's attacks on their credibility are no basis to overturn the verdict. If the testimony is believed, the jury had abundant evidence from which it reasonably could find that Williams conspired to distribute controlled substances.

Curry also raises a perfunctory challenge to the sufficiency of the evidence supporting his conviction for conspiracy to distribute crack cocaine. His brief includes no discussion of the evidence or explanation of why it is insufficient. Our review of the record, in the light most favorable to the verdict, satisfies us that the jury's decision should stand. Curry distributed crack cocaine to an undercover agent on multiple occasions, and then admitted that Combs was his source for the drugs. Other witnesses testified that Curry distributed crack cocaine as part of the operation at the East 12th Street apartment. There was sufficient evidence for the jury to find that Curry knowingly and intentionally joined the charged conspiracy.

C.

Curry raises two arguments based on a theory of entrapment. Although he did not request a jury instruction on entrapment, Curry contends that the district court committed plain error by failing to instruct the jury about an entrapment defense. He also asserts that he suffered ineffective assistance of counsel, in violation of the Sixth Amendment, because his trial counsel failed to seek an entrapment instruction.

In accordance with our normal practice, we decline to address the ineffective assistance of counsel claim on direct appeal, because there is no showing that the district court developed a record on the issue of ineffectiveness, or that a plain

miscarriage of justice would result from postponing consideration of the matter. *See United States v. Lewis*, 483 F.3d 871, 873 n.2 (8th Cir. 2007). Curry argues that "[t]his record appears to be as developed as it's going to get" on the question of whether counsel should have requested an entrapment instruction, but he misunderstands the meaning of a developed record in this context. An ineffective assistance claim is ripe for resolution on direct appeal if the district court has created a record on the specific issue of ineffective assistance. *United States v. Kenyon*, 7 F.3d 783, 785 (8th Cir. 1993). Here, Curry did not raise a claim of ineffective assistance in the district court, and the court neither convened an evidentiary hearing nor analyzed the potential merit of the claim. *Cf. United States v. Thomas*, 992 F.2d 201, 204 (8th Cir. 1993).

On Curry's claim of plain error, we consider whether the absence of a jury instruction on entrapment was an obvious error that affected the defendant's substantial rights and seriously affected the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993). Entrapment is an affirmative defense. A defendant seeking a jury instruction on the defense must present evidence that an agent of the government implanted the criminal design in his mind and induced him to commit the offense. *United States v. Kendrick*, 423 F.3d 803, 807 (2005). Only then does the burden shift to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *Id.* "If the defendant exhibits any predisposition to engage in the criminal conduct, the district court need not instruct the jury on entrapment." *United States v. Berg*, 178 F.3d 976, 980 (8th Cir. 1999).

Curry asserts that he was entitled to an entrapment instruction because the government's informant, Paul Garrity, induced him to distribute drugs and introduced him to Special Agent Allers, who then purchased drugs from Curry while working undercover. Curry contends that he had recently been released from a halfway house,

where he was treated for drug abuse, and that Garrity brought him crack cocaine and beer, and "pulled him off the wagon."

We are not convinced that the trial record presented an obvious case of a defendant with no predisposition to distribute crack cocaine, such that the district court plainly erred by failing to instruct the jury on entrapment. There was evidence that Curry began to distribute crack cocaine shortly after he was released from the halfway house in or about January 2006. (Tr. 458, 482). This was well before Garrity introduced Curry to Allers in April 2006. While Curry complained that Garrity had encouraged him *to use* crack by bringing beer to Curry's home, he went so far as to admit at trial that "[m]y drug *dealing* is not Paul Garrity's fault," (Tr. 721) (emphasis added), and he described his involvement with Garrity and Allers as a way "to try to make money and get high at the same time." Unlike the evidence in *Sherman v. United States*, 356 U.S. 369 (1958), or *United States v. Benavidez*, 558 F.2d 308 (5th Cir. 1977) (per curiam), Curry made no showing that he was an unwilling participant who refused opportunities to enter the drug trade before succumbing to the pressure of government agents. Where agents simply offer a subject the opportunity to commit a crime, and the subject promptly avails himself of the criminal opportunity, an entrapment defense typically does not warrant a jury instruction. *Jacobson v. United States*, 503 U.S. 540, 550 (1992). The record here appears to fit that model, but at a minimum, the district court made no obvious error in failing to propose an entrapment instruction on its own initiative.

III.

A.

The appellants raise several issues related to their sentences. Wilder and Williams argue that the district court's consideration of the United States Sentencing Guidelines, even in their current advisory capacity, violates the constitutional

separation of powers. This argument is foreclosed by precedent. *Mistretta v. United States*, 488 U.S. 361, 380-84 (1989); *United States v. Barnett*, 574 F.3d 600, 602 (8th Cir. 2009). Wilder and Williams also challenge the appellate presumption that a sentence within the advisory guideline range is substantively reasonable with regard to 18 U.S.C. § 3553(a). The Supreme Court, however, permits the use of such a presumption, *Rita v. United States*, 551 U.S. 338, 347-51 (2007), and our precedent calls for its application. *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005). There is no basis to revisit these decisions.

B.

Wilder and Williams argue that the district court committed procedural error by applying the guidelines in a mechanized fashion without considering their individual circumstances, and that the court imposed substantively unreasonable sentences. Neither defendant raised a procedural objection in the district court, so we review the procedure employed for plain error. *United States v. Burnette*, 518 F.3d 942, 946 (8th Cir. 2008). We review the substantive reasonableness of the sentences under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

Before imposing sentence in Wilder's case, the court explained that it had considered all of the § 3553(a) factors, including the nature and circumstances of the offense and Wilder's history and characteristics. With regard to the seriousness of the offense and just punishment, the court noted Wilder's ties to the top of the conspiracy. In considering the need for deterrence and protection of the public, the court observed that Wilder has sustained a prior conviction for aggravated sexual assault and two convictions for battery. The court took account of Wilder's allocution, mental health, and troubled personal history, but expressed concern that Wilder showed "absolutely no remorse" for his criminal conduct. In light of all of the § 3553(a) factors, the court

concluded that a sentence at the bottom of the advisory guideline range was sufficient, but not greater than necessary, to address the essential sentencing concerns.

The court proceeded in a similar vein when sentencing Williams. The court declared that it had considered all of the § 3553(a) factors. The court noted Williams's association with people "right at the top" of a sophisticated drug conspiracy that was a "rampant seller of crack cocaine in the Quad Cities area." In connection with determining just punishment, the court noted Williams's "relatively minor" criminal history, and took account of his employment history and family ties when assessing the need to protect the public. The court expressly considered the need to avoid unwarranted sentencing disparity, and observed that there were several members of the same drug conspiracy whose sentences provided important benchmarks in fashioning a sentence for Williams. And the court expressed concern that Williams appeared to show "absolutely no remorse" for his conduct. After completing its analysis, the court concluded that a sentence at the bottom of the advisory range was sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)(2).

We are satisfied that the district court followed the procedure outlined in *Gall*. The court adequately considered the § 3553(a) factors and provided a sufficient explanation to facilitate appellate review. While the court imposed sentences within the advisory guideline range, the court did not employ an impermissible presumption of reasonableness. There was no procedural error, plain or otherwise. We also conclude that the sentences were not substantively unreasonable. The terms imposed were within the advisory guideline range, and the court highlighted adequate reasons, including the seriousness of the offense, lack of remorse, and Wilder's criminal history, to justify the chosen sentences.

Smith also challenges the substantive reasonableness of his 51-month sentence, citing his advanced age of seventy years as a reason that compelled a shorter term of

imprisonment. A defendant's age is among the many factors a sentencing court must consider in fulfilling the mandate of § 3553(a), *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007), but the court is not required to grant leniency to older defendants. We have made clear that sentencing courts now have wide discretion to weigh the § 3553(a) factors, *see United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc), and it is not unreasonable for a sentencing judge to agree with the Sentencing Commission's policy statement that age is not "ordinarily" a reason for treating one offender more leniently than another defendant with similar offense conduct and criminal history. *See* USSG § 5H1.1. There is no contention, moreover, that Smith is medically infirm. *Cf. United States v. Ryder*, 414 F.3d 908, 920 (8th Cir. 2005).

In explaining the sentence imposed, the court observed that Smith made the drug conspiracy successful by allowing his home to be used for the sale of crack cocaine and methamphetamine, that he received crack cocaine in exchange for facilitating the conspiracy, and that he expressed very minimal remorse for his conduct while blaming others. The court noted that Smith's role in the conspiracy was relatively limited, but explained that Smith's sentence was shorter than the term imposed on anyone else associated with the conspiracy. Smith's sentence was within the presumptively reasonable guideline range, and we conclude that it is not substantively unreasonable.

At oral argument, Smith raised for the first time a procedural argument based on *United States v. Chase*, 560 F.3d 828 (8th Cir. 2009). There, we remanded for resentencing due to a concern that the sentencing court did not properly consider factors relevant to sentencing under § 3553(a), including the defendant's age. *Id*. at 831. In *Chase*, the record was not clear about whether the district court recognized the distinction between factors that could be considered in making a "departure" under the sentencing guidelines, and factors that should be considered in evaluating a request for a "variance" from the advisory guidelines under § 3553(a). *Id*.

There is no indication in this record that the district court felt constrained to ignore any relevant consideration.  The court explained that it considered a variety of factors encompassed by § 3553(a), including Smith's age, lack of criminal history, conduct on release, role in the conspiracy, and minimal remorse.  Smith raised no procedural objection in the district court, and we see no procedural error comparable to that described in *Chase*.

* * *

For the foregoing reasons, the judgments of the district court are affirmed.

_____