# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3338

_____

United States of America,       *
      *
        Appellee,       *
      *    Appeal from the United States
      v.       *    District Court for the
      *    District of South Dakota.
Lyle Wilson,       *
      *
        Appellant.       *

_____

Submitted: June 18, 2010
Filed: September 1, 2010

_____

Before WOLLMAN, EBEL[1] and COLLOTON, Circuit Judges.

_____

EBEL, Circuit Judge.

In this direct criminal appeal, Appellant Lyle Wilson challenges his three convictions for conspiring to distribute marijuana and cocaine (counts one and two), and for possessing cocaine on June 9, 2007, with the intent to distribute it (count three). Wilson raises two arguments on appeal: 1) the district court abused its discretion in allowing the Government, pursuant to Fed. R. Evid. 404(b), to present evidence that Wilson shot at one of the

_____

[1]The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

conspiracy's drug suppliers, and 2) there was insufficient evidence to support Wilson's conviction for possessing cocaine on June 9, 2007, with the intent to distribute it. Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM Wilson's convictions on counts one and two, but VACATE his conviction on count three.

## I. BACKGROUND

The evidence at trial established the following: In 2001, upon graduating from high school, Lawrence Vigil and two friends, one of whom was Dominique ("Dom") Saucedo, began selling marijuana, and later cocaine, on the Pine Ridge Indian Reservation. From the outset, Vigil was the acknowledged leader of the operation. Vigil obtained drugs primarily from Manual Garcia, who lived in Denver. As the business grew, Vigil recruited a number of other friends and family members to help sell the drugs. One of the people to join Vigil's drug-trafficking operation was his mother, Alvina White Bull, also known as "Sister." Appellant Lyle Wilson was White Bull's boyfriend; he lived with her in her home. White Bull and Wilson introduced Vigil to Carlos Torres-Ortiz, who became another drug supplier for Vigil's conspiracy.

Vigil's organization sold drugs at several places on the Reservation, including the homes of White Bull and Saucedo, and out of Vigil's vehicles, which included a maroon Mitsubishi Gallant. Vigil would run his drug-trafficking operation from wherever he was living at the time, including out of his mother's (and Wilson's) home.

In 2008, the United States indicted eight defendants, including Vigil, Dom Saucedo, White Bull and Wilson, on charges stemming from the Vigil organization's drug-trafficking activities. At Wilson's trial, his defense was

2

that, while he lived for several years at White Bull's home, where significant drug-trafficking activity was occurring, he himself never joined the conspiracy. The Government's evidence, however, established instead that Wilson actively participated in Vigil's drug-trafficking operation. There was testimony, for example, that Wilson "watched the door" or was the "door man" at White Bull's home (Tr. v. II at 301-02), which meant he answered the door, asked customers what drugs they needed and either directed them to someone in the back of the house from whom the customer could purchase the drugs, or Wilson himself would go get the drugs from the back of the house and bring them to the customer waiting near the front door. Wilson also packaged drugs for the conspiracy and sold them out of White Bull's house. In addition, Wilson made several "drug runs" for Vigil to Denver and Nebraska to pick up more drugs for Vigil's operation.

Based upon the significant evidence linking Wilson to Vigil's drug-trafficking activities, the jury convicted Wilson of all three offenses charged against him: 1) conspiracy to distribute five kilograms of cocaine, and 2) conspiracy to distribute 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841, 846; and 3) possession of cocaine on June 9, 2007, with the intent to distribute it, in violation of 21 U.S.C. § 841.[2] The district court sentenced Wilson to 240 months in prison on each of the three counts, the

[2]21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." And 21 U.S.C. § 841(a)(1) makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Both cocaine and marijuana are controlled substances. See 21 U.S.C. § 812(c) Schedule I(c)(10) (marijuana), Schedule II(a)(4) (cocaine).

three sentences to run concurrently.  On appeal, Wilson challenges all three convictions.

## II.  DISCUSSION

**A.**     **Admission, under Fed. R. Evid. 404(b), of evidence that Wilson shot at Torres-Ortiz**

Over Wilson's objection, the district court allowed the Government to present evidence that Wilson once shot at Carlos Torres-Ortiz over a disputed drug debt.  According to Dom Saucedo's testimony, Wilson told him that Wilson had shot at "some Mexican guy" - Torres-Ortiz.  (Tr. v. I at 121-22.) Saucedo indicated that this was because Torres-Ortiz had "fronted" Wilson some cocaine and Wilson never paid him for it.  Wilson told Saucedo that, when Torres-Ortiz showed up at Wilson's place looking for his money or the cocaine, Wilson feared Torres-Ortiz was going to kill him, so Wilson came out of his house shooting at Torres-Ortiz.  Torres-Ortiz ran away, unharmed.

Later in the trial, defense counsel elicited testimony from another co-conspirator, Cleveland Robideaux, that Wilson had also told him that he had once shot at someone over a bad drug deal.  The Government then brought out on redirect examination that this was the same incident, involving Wilson and Torres-Ortiz, to which Dom Saucedo had testified.  The defense raised the matter again briefly during recross-examination of Robideaux.[3]

---

[3]When the district court ruled, prior to trial, that the Government could present testimony that Wilson shot at Torres-Ortiz, the court also granted defense counsel a "standing objection" to the admission of this evidence.  The reason defense counsel raised the issue with Robideaux was to impeach his testimony against Wilson at trial by pointing out that Robideaux, when he initially cooperated with police, failed to mention that he knew about Wilson's
(continued...)

4

The district court permitted the Government to present this testimony about the shooting under Fed. R. Evid. 404(b), as evidence of other bad acts tending to establish Wilson's knowledge of, and intent to participate in, Vigil's conspiracy.[4] The court, therefore, instructed jurors that they could only consider evidence that Wilson shot at Torres-Ortiz for that limited purpose.

### 1. Admissibility under Rule 404(b) generally

Federal Rule of Evidence 404(b) provides in pertinent part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." This "rule is one of inclusion, such that evidence offered for permissible purposes is presumed admissible absent a contrary determination." United States v. Littlewind, 595 F.3d 876, 881 (8th Cir. 2010) (quotation omitted).

The district court has broad discretion to admit evidence under Rule 404(b). See Littlewind, 595 F.3d at 881. Therefore, this court reviews the

---

[3](...continued)
involvement in the shooting incident.

[4]Prior to trial, the district court ruled that it would allow this evidence as part of the res gestae of the charged offenses, and alternatively as admissible under Rule 404(b). At the conclusion of the trial, however, the court ruled that the Government had failed to present any evidence linking this shooting to the charged Vigil conspiracy. The trial court concluded, therefore, that the testimony about the shooting was admissible, but only under Rule 404(b) as evidence of other bad acts tending to establish Wilson's knowledge of, and intent to participate in, Vigil's conspiracy.

district court's decision to admit Rule 404(b) evidence for an abuse of discretion. See United States v. Washington, 596 F.3d 926, 945 (8th Cir. 2010), petition for cert. filed, (U.S. July 21, 2010) (No. 10-5695). We will reverse "only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." Littlewind, 595 F.3d at 881 (quotation omitted).

### 2. The district court did not abuse its discretion in admitting evidence that Wilson shot at Torres-Ortiz

In determining whether evidence is admissible under Rule 404(b), we ask whether the evidence is (1) "relevant to a material issue"; (2) "similar in kind and not overly remote in time to the crime charged"; (3) "supported by sufficient evidence"; and (4) "its potential prejudice does not substantially outweigh its probative value." United States v. Donnell, 596 F.3d 913, 921 (8th Cir. 2010) (quotations omitted), petitions for cert. filed, (U.S. July 14 & 15, 2010) (Nos. 10-5495, 10-5533).

### (a) Relevance to a material issue

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The evidence that Wilson once shot at Torres-Ortiz is clearly relevant to the critical issue disputed at trial in this case, whether Wilson knew of, and actively participated in, Vigil's drug-trafficking conspiracy. See generally United States v. Thomas, 593 F.3d 752, 758 (8th Cir. 2010) (noting generally that knowledge and intent are material issues in cases involving distribution of narcotics under 21 U.S.C. § 841), petition for cert. filed, (U.S. May 20, 2010) (No. 10-5218). Evidence that Wilson shot at Torres-Ortiz when he came looking for the cocaine he had fronted Wilson or for the money Wilson

6

owed Torres-Ortiz for that cocaine tends to establish that Wilson knew that Torres-Ortiz was a drug dealer, even though the particular cocaine involved in that transaction was apparently not destined for use in Vigil's drug business. Then the fact that Wilson knew Torres-Ortiz was a drug dealer tends to make it more likely that when Wilson introduced Torres-Ortiz to Vigil he was participating in Vigil's drug conspiracy by introducing Vigil to another possible supplier of drugs for Vigil's drug activities. See United States v. Turner, 583 F.3d 1062, 1066 (8th Cir. 2009) (holding evidence of prior drug dealings is relevant to the issue of whether the defendant had the requisite intent to enter into a drug-trafficking conspiracy), cert. denied, 130 S. Ct. 1928 (2010).

### (b) Similar in kind and not overly remote from charged offenses

Notwithstanding Wilson's argument to the contrary, this shooting was similar to the drug-trafficking charged in this case because it stemmed from a dispute over a drug debt. More precisely, it stemmed from Torres-Ortiz fronting Wilson cocaine, which is the same type of conduct with which Wilson was involved as part of the Vigil conspiracy. And it was not remote in time because it apparently occurred within the charged dates of the conspiracy.

### (c) Sufficiency of the evidence that Wilson shot at Torres-Ortiz

To be admissible under Rule 404(b), the Government had to prove by a preponderance of the evidence that Wilson shot at Torres-Ortiz. See Littlewind, 595 F.3d at 881. Here, the Government offered sufficient evidence from which the jury could have found, by a preponderance of the evidence, that Wilson shot at Torres-Ortiz over a bad drug debt, i.e. the testimony of co-conspirators Dom Saucedo and Cleveland Robideaux. That evidence was

sufficient.  See Turner, 583 F.3d at 1066 (holding testimony of two witnesses was a sufficient evidentiary basis from which the jury could find that the defendant's other bad act occurred).  On appeal, Wilson does not argue to the contrary.

### (d)  Balancing potential prejudice to Wilson with the probative value of the evidence of the shooting

As previously discussed, evidence that Wilson shot at Torres-Ortiz over a bad drug deal was probative of the critical issue disputed at trial, whether Wilson knew of, and actively participated in, Vigil's drug trafficking.  And the probative value of this shooting evidence outweighed any potential prejudice to Wilson.  Any such prejudice was minimized because the testimony about the shooting was very brief.  And the full extent of that testimony was that, after Wilson shot at Torres-Ortiz, Torres-Ortiz ran away unharmed.  Further, the prosecutor did not mention the shooting during her closing argument. (Defense counsel did make a fleeting reference to this evidence in his closing remarks.)  Finally, and importantly, the district court limited the prejudicial impact of this evidence on Wilson's defense by instructing jurors to consider it only in deciding whether Wilson knew of, and actively participated in, Vigil's drug-trafficking operations.  See Donnell, 596 F.3d at 921; Littlewind, 595 F.3d at 881.  For these reasons, the probative value of the testimony that Wilson once shot at Torres-Ortiz outweighed any unduly prejudicial impact that this evidence might have had on Wilson's defense.

In arguing to the contrary, Wilson relies on two cases that are inapposite.  First, Wilson asserts that his case is similar to United States v. Falls, 117 F.3d 1075 (8th Cir. 1997).  There, the Government charged Lamont Falls with being the leader of a drug distribution operation in Iowa and of supplying that operation with large amounts of cocaine.  See id. at 1076.  As proof of those offenses, the Government presented the testimony of Trevor

Woods, who was not connected in any way to the Iowa operation, but who testified that during this same time period, he bought ten kilograms of cocaine from Falls in California. See id. "Woods also testified that Falls regularly carried a gun and that on one occasion Falls sold Woods a gun." Id. at 1077. This court held that the district court had abused its discretion in admitting Wood's testimony under Rule 404(b) because it went only to Falls' propensity to commit drug crimes similar to those charged in the Iowa prosecution. See id. This court further determined, however, that this error was harmless. See id. at 1077-78.

Unlike in Falls, here the fact that Wilson knew that Torres-Ortiz was a drug dealer from other dealings between the two was relevant to the question of whether Wilson knew of, and intended to join and to further, Vigil's drug-trafficking operation. Wilson did that in part by introducing Vigil to Torres-Ortiz as another possible drug supplier for the conspiracy charged in this prosecution. Thus, in this case, unlike in Falls, there is a connection between Wilson's shooting at Torres-Ortiz over a bad drug deal and Wilson's participating in Vigil's operation. Moreover, the evidence challenged here was very brief and accompanied by a limiting instruction, unlike in Falls where the challenged testimony was "lengthy" and the court did not give any limiting instruction, see id. at 1077.

That connection, between Wilson's shooting at Torres-Ortiz over a bad drug deal and Wilson's participating in Vigil's operation, also distinguishes this case from the second case on which Wilson relies, United States v. McDermott, 64 F.3d 1448 (8th Cir. 1995). In McDermott, the United States charged McDermott with being engaged in a continuing criminal enterprise and with interstate travel in aid of unlawful activity. See id. at 1450. This court determined that the district court had erred in that case by admitting testimony that when, during an argument, an acquaintance called McDermott a pothead and a drug dealer, McDermott told her that if she ever told anyone

9

that, she would be hurt or even killed because McDermott had connections with people bigger than himself. See id. at 1450-51, 1456. McDermott held that the district court erred in admitting that evidence because, "whatever probative value the testimony had was substantially outweighed by its potential for unfair prejudice." Id. at 1457. However, that error was not the basis upon which a new trial was ordered in that case. See id. at 1450, 1454. Again here, evidence that Wilson shot at Torres-Ortiz when he came to collect on a bad drug debt was probative of the critical issue disputed at trial. And here, unlike in McDermott, any potential prejudiced was minimized by the manner in which the Government presented this evidence and by the district court's limiting instruction. Thus, in our case, the probative value of the testimony was not substantially outweighed by its potential for unfair prejudice.

### 3. Conclusion as to the district court's admitting evidence of the shooting under Rule 404(b)

After weighing the four relevant factors, discussed above, we conclude that the district court did not abuse its discretion in admitting evidence that Wilson once shot at Torres-Ortiz over a bad drug debt.[5]

### B. Sufficiency of the evidence supporting Wilson's conviction for possessing cocaine on June 9, 2007, with the intent to distribute it

In June 2007, Wilson was living with White Bull at her house, as was Vigil, along with his girlfriend Brandi Saucedo and their two daughters. Tribal police arrested Wilson and White Bull on the night of June 8, 2007.

---

[5]Alternatively, if it was error to admit this evidence, which we conclude it was not, any such error would surely be harmless in light of the significant amount of evidence linking Wilson to the Vigil drug-trafficking conspiracy.

Officers then searched White Bull's home in the early morning of June 9. They found no drugs in the house, but they did find drug paraphernalia indicating recent drug use.

At the same time, police also searched several vehicles parked outside White Bull's home, including a maroon Mitsubishi Gallant registered to Vigil and a Frieda White Bull.[6] In that car, which was locked, officers found plastic bags of marijuana in a knapsack, several plastic bags containing cocaine (approximately one ounce) and marijuana in the unlocked glove compartment, approximately $22,150 in cash in an unlocked metal case or box, and more cocaine (approximately seven ounces) in a locked safe.

Based upon the cocaine found in Vigil's locked car on June 9, 2007, the United States charged Wilson, as well as White Bull and Vigil, with possession of cocaine on June 9, 2007, with the intent to distribute it. The jury convicted Wilson of this offense. On appeal, he argues that there was insufficient evidence to support his conviction for this offense.[7] We agree.

---

[6]There were a total of four vehicles parked at White Bull's home that night: Vigil's maroon Mitsubishi Gallant, Vigil's grandfather's red truck, which was registered to Frieda White Bull but used by Vigil, a green Chevrolet Tahoe that "was missing parts," and a recreational vehicle registered to a couple named Shrader.

[7]The fact that the district court imposed concurrent sentences on each of Wilson's three convictions does not preclude him from challenging the sufficiency of the evidence necessary to support one of those three convictions. See United States v. McKnight, 17 F.3d 1139, 1140-41, 1145 (8th Cir. 1994) (reversing one of several convictions because there was insufficient evidence to support that conviction, vacating the special assessment imposed for the vacated conviction, but not remanding for resentencing because the court had imposed concurrent sentences on each count of conviction).

11

**1. Standard of review**

We review "the sufficiency of evidence supporting a conviction <u>de novo</u>, viewing all evidence in the light most favorable to the verdict." <u>United States v. Wilder</u>, 597 F.3d 936, 943 (8th Cir. 2010), <u>petition for cert. filed</u>, (U.S. June 4, 2010) (No. 09-11262). Further, the appellate court gives "the government the benefit of all reasonable inferences from that evidence." <u>United States v. Parker</u>, 587 F.3d 871, 880 (8th Cir. 2009) (quotation omitted). Therefore, even "[i]f the evidence adduced at trial rationally supports conflicting hypotheses, we [will] refuse to disturb the conviction." <u>Thomas</u>, 593 F.3d at 760. "We will overturn a verdict only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." <u>Wilder</u>, 597 F.3d at 943.

**2.    There was no evidence from which a reasonable jury could have found Wilson guilty of possessing the cocaine locked in Vigil's car on June 9, 2007**

The United States, in count three of the superseding indictment, charged Wilson with "knowingly and intentionally possess[ing] with the intent to distribute, cocaine" "[o]n or about June 9, 2007." (Am. R. at 2 (emphasis added).) In order to convict Wilson of that offense, the Government had to prove, and the jury had to find beyond a reasonable doubt that (1) Wilson knowingly possessed cocaine on June 9, 2007, and (2) intended to distribute it. <u>See</u> <u>Thomas</u>, 593 F.3d at 759.[8]

---

[8]Although the indictment and jury instructions read "on or about June 9, 2007" (Am. R. at 2, 49), the evidence at trial on this count was precisely limited to the particular cocaine that was found in Vigil's Mitsubishi on June 9, 2007. There was no evidence that this particular cocaine was in Vigil's Mitsubishi on any other date or time. Because the possession charge focused

(continued...)

At the conclusion of the Government's case, the district court denied Wilson's motion for judgment of acquittal, concluding there was evidence from which a jury could convict Wilson on this count, under either a constructive possession or an aiding-and-abetting theory. The court then instructed jurors on those theories and, during closing arguments, the Government relied on both theories.[9]

### a. Constructive possession

"For constructive possession, a defendant must have knowledge of an object, the ability to control it, and the intent to do so." Parker, 587 F.3d at 881 (quotation omitted); see also United States v. McClellon, 578 F.3d 846, 854 (8th Cir. 2009) ("Knowledge of presence, combined with control over the thing is constructive possession") (quotations, alteration omitted), cert. denied, 130 S. Ct. 1106 (2010). Constructive possession can be either joint or exclusive possession. See Thomas, 593 F.3d at 760.

### i. There was no evidence that Wilson knew there was cocaine in Vigil's Mitsubishi on June 9, 2007

The Government charged Wilson with possessing cocaine on or about June 9, 2007. Although the Government presented evidence that officers

---

[8](...continued)
on particular cocaine found at a particular location on a particular date, this count is properly restricted to the cocaine found on June 9, 2007.

[9]Although the United States did not explicitly charge Wilson with aiding and abetting the possession of cocaine, with the intent to distribute, Wilson concedes on appeal that he could still be convicted under that theory. See United States v. Starr, 533 F.3d 985, 997 (8th Cir. 2008).

found cocaine in Vigil's car on that date, there was no evidence that <u>Wilson</u> knew that the cocaine was in Vigil's car on that night.

The Government points to evidence establishing that Wilson participated in Vigil's drug trafficking generally. Similarly, there was evidence that most of the members of Vigil's operation knew generally that he transported drugs in, and sold drugs out of, his Mitsubishi Gallant. Vigil had even given Wilson and White Bull this car on one occasion so they could make a "drug run" for Vigil's operation. But the Government did not present any evidence indicating that Wilson knew that there was cocaine in the Mitsubishi on June 9, 2007.

On appeal, the Government appears to suggest that Wilson must have known that there was cocaine in Vigil's car that night because officers found evidence that cocaine had been ingested recently inside White Bull's house. Without more, however, that evidence does not provide an evidentiary basis for a jury to find beyond a reasonable doubt that Wilson knew there was cocaine <u>in Vigil's car</u> that night. There was no evidence that the ingested cocaine had recently, or ever, come from this Mitsubishi.

Knowledge can be inferred from the surrounding circumstances. For instance, "[a] defendant's control and dominion over a vehicle can indicate knowledge" of its contents. <u>Parker</u>, 587 F.3d at 881. But the Government points to no evidence indicating that Wilson had dominion and control over Vigil's Mitsubishi that night. It was locked and there was no evidence that Wilson had a key.[10] <u>See</u> <u>Thomas</u>, 593 F.3d at 759-60 (noting that a defendant

---

[10]The Government points to the fact that officers that same night found marijuana in Vigil's grandfather's <u>unlocked</u> pickup truck. But the fact that Wilson might have been able to access that marijuana does not prove the charged offense of possessing cocaine found in Vigil's locked car.

14

with a key to a vehicle has constructive possession of the contents of the vehicle).  Moreover, seven of the eight ounces of cocaine found in Vigil's car was further locked in a safe.  And there was no evidence that Wilson could have unlocked the safe, either.  As is pointed out in the next section of this opinion, there was simply no evidence that  Wilson had such control over Vigil's Mitsubishi on July 9, 2007, such that it could be inferred that Wilson would have known of the existence of cocaine in that vehicle on that date.

There was, then, no evidence from which a reasonable jury could have found that Wilson knew, on June 9, 2007, that there was cocaine in Vigil's car.

### ii.   Nor was there any evidence that, had he known of the cocaine in Vigil's car, Wilson had the ability to control it on June 9, 2007

"If knowledge of [the] presence [of contraband] exists, then control is established by proof the person has dominion over the premises in which the contraband is concealed."  McClellon, 578 F.3d at 854 (quotation omitted).  Even if we could say that there was evidence from which a reasonable jury could have inferred that Wilson knew of the cocaine in Vigil's car on June 9, 2007 (which we cannot), there was no evidence that Wilson had the ability to control that cocaine on that night.  The car was locked and there was no evidence suggesting Wilson had a key or otherwise had access to the inside of the vehicle.  See Thomas, 593 F.3d at 759-60.  Nor was there any evidence suggesting that Wilson could have opened the safe in the car, where most of the cocaine was found, had he been able to gain access to the inside of the vehicle.

There was also no evidence that Wilson generally had access to Vigil's car.  As previously mentioned, Vigil sent Wilson and White Bull, in Vigil's

15

Mitsubishi, to Nebraska on one occasion to get more drugs for Vigil's operation. There was no evidence, however, that Vigil ever again lent Wilson the Mitsubishi. To the contrary, on several occasions, Wilson had to borrow another person's car to make a drug run for Vigil.

More generally, there was evidence presented at trial that Vigil did not trust Wilson or White Bull completely, in part because they would on occasion use up the drugs that Vigil would front them to sell. Therefore, Vigil would ordinarily leave Wilson and White Bull with a limited amount of drugs to sell. When they had sold that amount, they would have to contact Vigil to get more. Against this testimony, the Government points to no evidence that suggests instead that Wilson had unrestricted access to Vigil's stash of drugs.

Therefore, even if we concluded that there was evidence from which a jury could find that Wilson knew there was cocaine in Vigil's Mitsubishi on June 9, 2007, which we do not, there was no evidence from which the jury could have further found, beyond a reasonable doubt, that Wilson had the ability to control that cocaine on that night.

### iii. There was no evidence that Wilson had the intent to control the cocaine found in Vigil's car <u>on June 9, 2007</u>

Because there was no evidence that Wilson knew about the cocaine police found in Vigil's car on July 9, 2007, and because there was no evidence that he had any ability to control that cocaine on that night, it is not surprising that there also was no evidence that Wilson had any intention of controlling the cocaine in Vigil's car on that date.

### iv. Conclusion as to constructive possession

For the foregoing reasons, therefore, we conclude that there was insufficient evidence from which a reasonable jury could have found, beyond a reasonable doubt, that Wilson had constructive possession of the cocaine officers found in Vigil's car on June 9, 2007.

### b. Aiding and abetting Vigil's possession

To establish, alternatively, that Wilson aided and abetted Vigil's possession of this cocaine, the Government had to prove, and the jury had to find beyond a reasonable doubt, that Wilson (1) "associated himself with the unlawful venture"; (2) "participated in it as something he wished to bring about," and (3) "sought by his actions to make it succeed." United States v. Lewis, 593 F.3d 765, 769 (8th Cir.), cert denied, 130 S. Ct. 3375 (2010). The aider and abettor must share the criminal intent of the party he is aiding. See United States v. Santana, 524 F.3d 851, 855 (8th Cir. 2008). "[I]n an aiding-and-abetting case," however, "the government is not required to prove that the defendant possessed the controlled substance." Id. at 854. Nevertheless, "[m]ere association between a principal and the defendant is not sufficient, nor is mere presence at the scene and knowledge that a crime was to be committed." Id. at 853.

The Government is unable to point to any evidence presented at trial from which a reasonable jury could have found beyond a reasonable doubt that Wilson aided and abetted Vigil's possession of the cocaine found in Vigil's car on June 9, 2007. As previously explained, there was no evidence that Wilson knew that Vigil had cocaine in his car on June 9, 2007, let alone that Wilson associated himself with Vigil's unlawful endeavor of possessing that cocaine that night with the intent to distribute it. Thus, there was also no evidence that Wilson participated in Vigil's unlawful possession of that

cocaine, or that Wilson took action to make Vigil's unlawful possession succeed.

### 3. Relief

For the foregoing reasons, there was no evidence from which a reasonable jury could convict Wilson of possessing the cocaine found in Vigil's car on June 9, 2007, whether that charge was based upon a theory of Wilson's constructive possession or his aiding and abetting Vigil's possession of that cocaine, with the intent to distribute it. Wilson, therefore, is entitled to the vacatur of that conviction and the sentence imposed for it. See United States v. Hayes, 574 F.3d 460, 484 (8th Cir. 2009). Wilson does not seek resentencing as further relief, and we conclude that resentencing in this case is, in any event, unnecessary. Although the advisory sentencing guideline range for Wilson's convictions was 360 months to life in prison, the district court imposed a below-guideline sentence of 240 months, which corresponded with the mandatory minimum twenty-year sentence Wilson must serve for his conviction on the first conspiracy count, in light of Wilson's prior conviction for a felony drug offense.[11]  See 21 U.S.C. § 841(b)(1)(A). In light of that,

_____

[11]Wilson's advisory guideline range was 360 months to life because he qualified as a career offender under U.S.S.G. § 4B1.1. That increased his total offense level from 34 to 37, and increased his criminal history category from IV to VI. The district court imposed a below-guideline sentence of 240 months, which would have been in the middle of the range had Wilson not qualified as a career offender, because the court determined the higher guideline range overstated his criminal history, and to make Wilson's sentence more proportional to his co-defendants, who all received much shorter sentences (because they pled guilty, cooperated with the Government, and did not have lengthy criminal histories). There was no indication in the record that the existence of the conviction under Count Three for possession of cocaine with the intent to distribute played any separate factor in the district

(continued...)

18

there is no need to remand Wilson's case for resentencing. See United States v. Pugh, 151 F.3d 799, 800 (8th Cir. 1998) (vacating one of several convictions because there was insufficient evidence to support it, but deciding not to remand for resentencing because the vacated conviction would not alter the defendant's sentence); cf. McKnight, 17 F.3d at 1145 (vacating one of several convictions but not remanding for resentencing where district court had imposed concurrent sentences on all counts).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Wilson's two convictions for conspiring to distribute marijuana and cocaine. But we VACATE Wilson's conviction for possession of cocaine on June 9, 2007, with the intent to distribute, as well as the sentence and special assessment imposed on that conviction. Because the sentence on count three did not contribute in any way to the term of imprisonment or subsequent supervision imposed upon Wilson for the other two convictions we have upheld, we do not need to remand this matter back to the district court.

---

[11](...continued) court's sentencing determination. That includes the amount of cocaine on which the guideline calculations were made. The amount of cocaine for which the Government established that Wilson was responsible in Count One, the conspiracy to distribute cocaine, was so large that the several ounces underlying Wilson's third count would have made no difference. In fact, the cocaine underlying Count Three was not even factored into the calculations separately.