# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1301
_____

United States of America

*Plaintiff - Appellee*

v.

Mark James Olson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Southern
_____

Submitted: October 18, 2023
Filed: March 25, 2024
[Unpublished]
_____

Before SMITH, Chief Judge,[1] LOKEN and COLLOTON,[2] Circuit Judges.
_____

PER CURIAM.

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

A jury convicted Mark Olson of possession of a firearm or ammunition by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2), and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). On appeal, Olson argues that the district court[3] erred in admitting the firearm without a proper chain of custody and because the firearm's serial number was altered after law enforcement seized it from Olson. We affirm.

## I. *Background*

Sioux Falls Police Department (SFPD) Detective Danijel Mihajlovic investigated Olson and his brother Tyler Olson (Tyler) for suspected narcotics distribution from a home in Sioux Falls, South Dakota. While conducting surveillance on the home, Detective Mihajlovic located a stolen vehicle at the residence. Detective Mihajlovic and other narcotics detectives followed the vehicle. SFPD Detective Nick Billings identified the driver as Olson and followed the vehicle into a parking lot. He observed Olson and the back seat passenger, later identified as Tyler, exit the vehicle and enter a store.

Detective Billings approached the vehicle and removed the front seat passenger, a female, whom Detective Mihajlovic then detained. Detective Billings entered the store, located Olson and Tyler, and ordered them to the ground. Minnehaha County Sheriff's Office Detective Dan Christiansen and SFPD K9 Officer Cody Nachreiner then handcuffed Olson. Officer Nachreiner asked Olson if he had any weapons. Olson said yes and nodded to the left side of his body. Officer Nachreiner removed a black handgun from Olson's front left pocket and gave it to Detective Christiansen. The handgun was a Glock, Model 42, .380-caliber handgun. Officers also located ammunition in Olson's pockets.

---

[3]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

The officers then moved Olson and Tyler to the parking lot. There, Detective Christiansen rendered the firearm safe and placed it in SFPD Detective Jason Holbeck's patrol car. Detective Holbeck secured the gun in his vehicle and kept the vehicle locked when absent. Detective Mihajlovic retrieved the firearm from Detective Holbeck's vehicle[4] and transported it from the scene to the SFPD evidence room. At the SFPD, Detective Mihajlovic packaged the firearm in a card box, sealed it, and tagged it as evidence.

A federal grand jury returned an indictment charging Olson with possession of a firearm and ammunition by a prohibited person. A federal grand jury subsequently returned a superseding indictment charging Olson with possession of a firearm and ammunition by a prohibited person and possession with intent to distribute a controlled substance. Olson pleaded not guilty and proceeded to trial.

At trial, Detective Billings testified about the firearm's distinctive markings, stating that "[t]he writing on the firearm has blue paint in it or blue inlay" and that the firearm's appearance in court matched its appearance when seized. R. Doc. 153, at 27. On cross-examination, defense counsel asked Detective Billings how many serial numbers were on a Glock-type gun. However, he never asked Detective Billings if he dropped the firearm, scratched it, or saw it altered in any way after it was seized from Olson.

Officer Nachreiner testified that he did not inspect the firearm and could not testify about the gun's condition given his momentary possession of it after removing it from Olson's pocket.

---

[4]Detective Holbeck testified that he believed that it was Detective Billings who retrieved the gun from his vehicle, but he knew that Detective Billings was working with Detective Mihajlovic.

Detective Christiansen testified that he recalled the gun's distinctive "blue marker . . . in the lettering, and then a pin of some sort . . . colored blue as well." *Id.* at 57. On cross-examination, defense counsel inquired whether Detective Christiansen "closely inspect[ed]" the firearm. *Id.* at 66. Detective Christiansen responded that a gun he owns "is one model off of this." *Id.* He was able to "identify it very quickly because . . . [he] carr[ies] it every day. So it immediately was recognizable to [him]." *Id.* According to Detective Christiansen, "the blue lettering" is "what stuck out" to him. *Id.* It was "not something [he had] ever seen before" and was "odd." *Id.* at 66–67. Defense counsel asked Detective Christiansen "how many serial numbers are generally on this type of weapon," to which he responded that "[t]wo to three would be [his] assumption" but definitely more than one. *Id.* at 67. Detective Christiansen testified that while rendering the gun safe he did not "believe [he] dropped the gun or anything." *Id.* Defense counsel did not ask Detective Christiansen if he scratched one of the serial numbers or observed someone else scratch one of the serial numbers on the firearm.

Detective Holbeck testified that he saw the gun at the scene. "What [Detective Holbeck] recall[ed] most about it was it had blue inlay in the markings on the slide and then one of the pins for the lower portion of the gun." *Id.* at 73. On cross-examination, Detective Holbeck testified that he remembered there were "markings on the plate for the serial number" but did not recall if he had checked the gun's stolen status. *Id.* at 76. Detective Holbeck further testified that he never touched or handled the gun while it was in his custody.

Detective Mihajlovic identified "Government Exhibit 3" as "the firearm that was found on Mr. Mark Olson." R. Doc. 154, at 18. He testified that upon his arrival to the SFPD evidence room, he packaged the firearm in a card box and tagged it as evidence. Detective Mihajlovic confirmed that he "recognize[d] identifiers on that box belonging to [him]." *Id.* at 19–20. On cross-examination, defense counsel questioned Detective Mihajlovic about the evidence log for the items seized from

Olson. An evidence log was shown to Detective Mihajlovic but was never offered into evidence. Detective Mihajlovic testified that he logged the gun into evidence as shown by his name on the receipt and his initials on the red seal. Additionally, he identified the evidence log that defense counsel showed him as the log entry for the magazine removed from the gun. Detective Billings logged the magazine into evidence storage. Detective Mihajlovic was not asked if he scratched the gun, nor did he testify that he had scratched the gun. Government Exhibit 3 was then offered and received into evidence over Olson's objection. In addition to the firearm, the ammunition was offered and received into evidence. Olson did not object to the admission of the ammunition into evidence.

The government also introduced a recorded phone call between Olson and Tyler. In this call, Olson is heard telling his brother that the serial number on the gun was not scratched.

At the close of the government's case, Olson moved for judgment of acquittal, arguing that the government failed to establish a prima facie case. Specifically, counsel argued that the government failed to establish a proper foundation for the admission of the firearm (Government Exhibit 3). The court denied the motion, concluding that record evidence

> show[ed] that the defendant was found in the store with the gun in his pocket. There was evidence then submitted to the jury establishing chain of custody, getting that gun into the evidence locker. Any issues with that evidence go to the weight to be given to the evidence, and that's an issue that's up to the jury to decide weight.

*Id.* at 151. The defense did not admit any exhibits into evidence and called no witnesses. The jury returned guilty verdicts against Olson on both counts.

## II. *Discussion*

On appeal, Olson argues that the district court erred in admitting the firearm without a proper chain of custody and because the firearm—specifically, the serial number—was altered after law enforcement seized it from Olson. He does not dispute that he was in possession of a firearm—a Glock, Model 42, .380-caliber handgun—when he was arrested.

Even assuming that the district court erred in admitting the firearm into evidence due to chain-of-custody concerns, such error was harmless. "An evidentiary error amounts to harmless error if, after viewing the entire record, the reviewing court determines that no substantial rights of the defendant were affected, and that the error had no, or only slight, influence on the verdict." *United States v. Neadeau*, 639 F.3d 453, 456 (8th Cir. 2011) (quoting *United States v. Mitchell*, 31 F.3d 628, 632 (8th Cir. 1994)). First, Olson does not dispute that he was in possession of a firearm—a Glock, Model 42, .380-caliber handgun—when he was arrested. He was never charged with possession of a firearm with an obliterated serial number pursuant to 18 U.S.C. § 922(k), and his sentence was not enhanced due to scratches on the gun's serial number. Second, Olson does not challenge the district court's admission into evidence of the ammunition seized from his person. The conviction he now challenges would stand based on the ammunition alone and certified copies of his prior felony convictions, which were also received into evidence without objection.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____